King and Ells, garnishees, *vs.* Carhart, Bro's & Co.

No. 92.—WILLIAM H. KING AND HENRY N. ELLS, garnishees, plaintiffs in error, *vs.* CARHART, BROTHERS & Co. defendants in error.

[1.] Debts secured by *negotiable* instruments, may be the subject of garnishment.

[2.] The transfer of a negotiable note as *collateral security*, puts the debt beyond the reach of a garnishment, at the suit of the creditor of the assignor—a garnishment served subsequently to the transfer.

[3.] If a garnishee's answer is, that he made to the debtor a negotiable note, and also, that he is well satisfied that the note was transferred by the debtor, before service of the garnishment, it is not such an answer as will authorize the Court to render a judgment against the garnishee.

Garnishment, in Bibb Superior Court. Decided by Judge POWERS, May Term, 1855.

Carhart, Bros. & Co. commenced an action of complaint against James S. Graybill, and issued a summons of garnishment against William H. King. King filed his answer to the garnishment, in which he stated, that on the first day of March, 1855, he gave Graybill two negotiable promissory notes, one for $1250, due Dec. 25th, 1856; the other for $1161 39. due at six months after date; both of which notes were made payable to Graybill or bearer; that the $1250 note was made to take up a note due by Graybill to to Crawford H. Grier, of Jasper County; and that he had been informed the same had been turned over to Grier. The other note, deponent did not know where it was, or who owned it."

This answer was filed on the 23d day of May, 1855.

When the case was called, plaintiff moved the Court to be allowed to enter up judgment against the garnishee; which motion the Court was about to grant, on the ground that the garnishee had not stated, in his answer, who had the notes in possession; but granted further time to garnishee to amend his answer, which he did, on the 4th day of June, 1855; stating in his second or amended answer, "that he had endeavored to ascertain from Graybill, when and to whom said notes were transferred; which information, the said Graybill has refused to give deponent."

On motion of plaintiff, the Court then allowed judgment to be entered up against the garnishee, in respect to the note of $1161 39. Afterwards, and during the same term of the Court, the garnishee filed another affidavit, and moved the Court to set aside and vacate the judgment in said case.

The garnishee in this affidavit, stated that the notes had been transferred by Graybill, one to the said Grier, and the other to Nathan C. Munroe, before the service of said summons of garnishment upon him; and that the said Grier and Munroe now held and owned said notes.

The Court over-ruled the motion, and refused to open the

judgment.. To which decision and judgment of the Court, Counsel for garnishee excepted.

The following are the facts in the case of *Ells vs. Carhart, Bros. & Co.* :

Garnishment, in Bibb Superior Court.    Tried before Judge POWERS, May Term, 1855.

Carhart, Brothers & Co. sued Terrell and Goddard, and served Henry N. Ells with a summons of garnishment, to answer what he was indebted to the defendants.    The garnishee denied having any effects in his hands, or being indebted to the defendants; and further stated, "that on the 29th January, 1855, he purchased a stock of goods from the defendants for the sum of $2000, which amount was settled and liquidated by him before said summons of garnishment was served by deducting therefrom the sum of $1082 10, which the defendants owed him, and gave his negotiable notes for the balance; and is thereby liable to the bearers of said notes, and not especially to said defendants; and he believes said notes have been transferred by said defendants."

Afterwards the garnishee amended his answer, and said that one of the notes he gave for the goods was for $350, due six months after date; that the other note was due one day after date; and that he was "well-satisfied" that the first mentioned note had been transferred before service of the garnishment; and that he believed that both had long since gone out of the possession of the defendants.

Counsel for plaintiff moved the Court to enter up judgment against the garnishee for the sum of 917 90, the amount sued for; which motion garnishee resisted, and offered to introduce evidence going to show that the said notes given by him to the defendants, had been transferred to *bona fide* holders before the summons of garnishment was served; "the Attorney for garnishee stating, in the argument, that he would swear that one of the notes, about $350, had been transferred. The Court rejected the evidence, and allowed

judgment to go against the garnishee; and Counsel for gar-nishee excepted.

POE; WHITTLE, for plaintiffs in error

E. A. NISBET, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

These two cases of *King vs. Carhart, Brothers & Co.* and *Ells vs. Carhart, Brothers & Co.* were argued together and were considered together.

The reasons urged against the validity of the judgments rendered in the cases, respectively, by the Court below, were the same in both cases.   These reasons were—

1. That a debt secured by a negotiable paper, is not the subject of garnishment.

2. That if such a debt is the subject of garnishment at all, it is not the subject of garnishment, after the note by which it is secured has been negotiated; and that, in these cases, the debts which the garnishors were seeking to make the subjects of garnishment, had, as appeared from the answers of the garnishees, been negotiated before the service of the garnishments.

The sufficiency of these reasons depends, mainly, on the import of a part of the Act of 1799, "to regulate attachments."   That part is in these words: "and it shall be the duty of the Sheriff, his Deputy, or any Constable, to serve and levy the same upon the estate, both real and personal, of such debtor, wherever the same may be found, either in the hands of any person indebted to or having effects of such debtor, and summon such person or persons to appear at the next Court to be held for said county, and to which the said attachment may be returnable, there to answer, on oath, what he is indebted to, or what effects of such party he hath in hands, or had, at the time of levying such attachment, which, being returned executed, the Court may, by order, compel such

person to appear and answer as aforesaid; and where any person, in whose hands any debt or effects may be attached, hall deny owing any money to, or having in his hands any effects of such debtor, it shall be lawful for the plaintiff to traverse such denial; and thereupon, an issue shall be made up, and the same be tried by a Jury; and if found against such garnishee, he, she or they shall be subject to pay the plaintiff such sum as shall be so found, and the Court shall cause judgment to be entered thereof, against such garnishee, as in other cases." (*Pr. Dig.* 31.)

According to these words, every sort of debt is the subject of garnishment; and a debt secured by a negotiable instrument is a sort of debt; therefore, according to these words, a debt secured by a negotiable instrument, is the subject of garnishment.

But it is said that to permit such a debt to be reached by garnishment, would sometimes be to expose an innocent man to the hazard of having to pay a debt twice. Be that so. Still, if the words of a Statute declare, without ambiguity, that such a debt may be reached by garnishment, such a debt must be held to be subject to garnishment; for when there is no ambiguity in the words of a Statute, the argument from the words, over-rides the argument from the effect and consequences.

Besides, *not* to permit such a debt to be reached by garnishment, would, itself, be any thing but an unmixed good. It would be to deprive creditors of what, in many cases, would be their only means of collecting their debts.

[1.] We think, therefore, that this, the first reason, was not a sufficient one to show the judgments of the Court below erroneous.

As to the second reason. It was not insisted that the Court below held that a debt secured by a negotiable instrument, was, after the instrument had been transferred, the subject of garnishment, in a suit against the assignor. The Court, doubtless, held the reverse. The difference between the Court below and the Counsel for the garnishees, seems

to have been as to the second branch of the reason—the inferential part; the Counsel insisting that the answers showed that the notes had been transferred before the garnishments were served—the Court considering that the answers did not.

In the case of King, the Court rendered a judgment against him, in respect to one of the notes only—that for $1161$\frac{39}{100}$.

As to this note, the answer which King was finally prepared to make, and which he offered to make, substantially, was, that before service of the garnishment, the note had been transferred by Graybill, the debtor, to one Peddy, to secure Peddy against loss, on account of a securityship he was under for Graybill, on a note of Graybill's, for about $1500.

This answer the Court would not receive, considering it not to be such as would show that the garnishee "was not indebted to the defendant in the suit, the amount of" the note.

[2.] Was this refusal of the Court right? In other words, does the transfer of a negotiable note, as collateral security, carry the legal title of the debt to the transferee? It does. And that has been decided by this Court in two cases—*Gibson and another vs. Conner*, (3 *Kelly*, 47,) and *Hall vs. Page*, (4 *Ga. R.* 428.) Such a transfer, therefore, puts the note beyond the reach of a garnishment, at the suit of a creditor of the note; that is, if the transfer be made before the garnishment has been served.

The Court, therefore, should have allowed King to make the amendment to his answer, which he offered to make.

This disposes of the case of King.

Ells, the garnishee in the other case, answered that he was "well satisfied" that one of the notes, in respect to which he had been summoned as garnishee, had been transferred before he was so summoned.

Notwithstanding this answer, the Court gave judgment against the garnishee, in respect to this note.

Was this judgment right? It was certainly so, if the garnishee's answer amounted to an admission that he owed the debtor this note.

Now the garnishee's answer was not an admission of this,

if any value is to be attached to the *belief* of the garnishee. And we think that somewhat of value is to be attached to the belief of a garnishee.

Garnishment is but a substitute for a proceeding in Equity —a proceeding in which the belief of the answering party receives a degree of credit. If the defendant to a bill in Equity answers that he believes that an allegation, essential to the plaintiff's case, is not true, the plaintiff must prove that allegation before he can get a decree in his favor.

And whatever reason there is why this should be so in a proceeding in Equity, there is that it should be so in a proceeding, by garnishment, at Law. In either proceeding, the plaintiff makes the other party his witness.

Doubtless, in the proceeding in Equity, the plaintiff would have the right to call for the *grounds* of the other party's belief; and if they, when got, were not sufficient, in Law, to support that belief, to ask that the belief should be disregarded: and if they were sufficient, in Law, to support the belief, to ask for an opportunity to prove them untrue, in fact. And so, in the proceeding at Law by garnishment, the plaintiff would have the right to pursue the same course.

[3.] But in this case the plaintiff in garnishment took no exception to the answer, on the ground that it did not state the garnishee's reasons for his belief. He accepted the answer as it stood; and he thereby admitted, that it was true that the garnishee, himself, was "well satisfied" that he did not owe *to the debtor* the note in question. And this garnishee was a person who was his witness; and moreover, a person who had nothing to gain by stating a falsehood as to his belief, for he had admitted that he owed the note to somebody. In such a case, we think the presumption ought to be, that the garnishee has some good reason for his belief; otherwise, the plaintiff in garnishment would call for the reason. If we are right in this, the plaintiff ought not, in such a case, to be allowed to have judgment against the garnishee, without at least making up an issue with him on his answer; and on that issue, proving him to have no foundation for his belief. It is

the garnishee that, in such a case, ought to have the benefit of the doubt.

Indeed, I may say for myself, that if a garnishee does not distinctly *admit* that he owes the debtor money, or that he has something of the debtor's in his hands, no judgment can, in my opinion, be taken against him without the intervention of *a Jury,* unless the garnishee choose to waive the intervention of a Jury. If, in his answer, he barely says that he does not believe that he owes the debtor, &c.; or even if, in addition to this, he gives only some insufficient reason for his belief; still, I think he has the right to go before a Jury on the question, whether he does owe the debtor, &c. or not. This I think his right, under the law of Jury trial. And this, if a right, may be one of great practical value, for the garnishee, on an issue before a Jury, might be able to prove, beyond a doubt, what, without an issue, he could only conjecture. If the garnishee in this case, could have had a chance to examine the debtors themselves, before a Jury, he could have forced them to say the truth as to the negotiation of the note. They could have told what the truth was, and as witnesses on such an issue, they would have been forced to tell. The person who is sued in garnishment, by the creditor of his creditor, is not, it appears clear to me, in a worse situation than that in which he would be, if he were sued in the ordinary form, by his creditor himself. But if he were sued in the ordinary form by the creditor, himself, that creditor could not get a judgment against him at all, unless he *confessed* a judgment to that creditor, or a Jury found a verdict for the creditor. Ought not the garnishee's answer, then, on which a judgment is to be entered up against him, to be of the nature of a *confession* of judgment? I think it ought.