GIBSON, SON & CO. *vs.* HAWKINS *et al.*

[On account of providential cause, JACKSON, Chief Justice, did not preside in this case.]

1. One who purchases a negotiable paper held as collateral security before due, *bona fide* and for value, takes it free from the equities between the maker and the payee, and stands upon the same

footing as any other innocent purchaser. But any circumstance which would place a prudent man on his guard in purchasing negotiable paper will be sufficient to constitute notice to a purchaser of such paper before it is due.

(*a.*) Where one takes a note payable to order before due, on the face of which are written the words, "To be held as collateral," such words are sufficient to put the purchasee on notice of the existence of equities between the parties.

2. A selling agent to whom goods were consigned desired to execute a collateral security to his principal to secure to the latter the payment of any money received on account of sales, and for that purpose jointly with another gave to the principal a promissory note. In a suit thereon, it appeared that the agent was in default on account of such goods $2,800, and to account therefor he showed unpaid accounts of purchasers of goods amounting to $1,700. No separate plea was filed by the other maker of the note. The verdict was against the agent, but in favor of the other maker:

*Held*, that this verdict was contrary to evidence. It should have been against both defendants.

November 28, 1882.

Promissory Notes. Negotiable Instruments. Notice. Verdict. Before Judge UNDERWOOD. Floyd Superior Court. March Term, 1882.

Reported in the decision.

DANIEL S. PRINTUP, for plaintiffs in error.

DABNEY & FOUCHE, for defendants.

SPEER, Justice.

John W. Bessman entered into a written agreement on the 4th of September, 1877, with John L. Hawkins, one of the defendants below to consign liquors to him of different kinds, to the amount of five thousand dollars, to be furnished at his lowest charges, and when sold the amount thus charged was to be paid over to Bessman within —— days, or deposited at the bank of Printup, Bro. & Co., on account of Bessman; goods were to be sold on commission or per cent over and above the prices Bessman

put upon the goods, so that the goods were to net Bessman the prices he fixed on them. Said Hawkins further agreed to deposit with Printup, Bro. & Co. a collateral security to the amount or value of one thousand dollars, to secure the payment of any money received on account of said sales.

In conformity with said agreement Bessman furnished the liquors, and Hawkins, on the 26th September, jointly with Samuel Hawkins, executed as the collateral stipulated to be deposited with Printup, Bro. & Co., the following promissory note:

"ROME, GA., September 26, 1877.

$1000.

Four months after date, for value received, we promise to pay to the order of John W. Bessman, one thousand dollars payable at the banking house of Printup, Bro. & Co., and if not punctually paid with interest from maturity at eight per cent. per annum, together with all expenses of collection including ten per cent. counsel fees on amount due, expressly waiving benefit of all the homestead or exemption laws of this state as against this debt.

(Endorsed:)                          (Signed)    JOHN L. HAWKINS,
    Pay to order of                              SAML. HAWKINS.
John Gibson, Son & Co.
    J. W. BESSMAN.
(Written across face of note:) "To be held as collateral."

John Gibson, Son & Co. brought as endorsees their suit against the defendants to recover the amount due on said sale. To this suit the defendants jointly pleaded the general issue, and also that "they were not liable to plaintiffs because said note was deposited with Printup, Bro. & Co. by virtue of a written agreement, under which J. L. Hawkins became the agent of Bessman to sell liquors in Rome on account of said Bessman, and said note was simply a collateral security to Bessman to secure him the payment of any money received by said J. L. Hawkins on account of said goods turned over to said Hawkins by plaintiff, and they aver the goods of plaintiff sold by defendant have been fully accounted for, and no money of the plaintiff now remains in his hands unaccounted for.".

Under the evidence submitted and charge, the jury re-

turned a verdict for plaintiffs against John L. Hawkins. for the amount of the note, and in favor of Samuel Hawkins, the codefendant. The plaintiffs below made a motion for new trial as to Samuel Hawkins on various grounds, which was overruled and they excepted.

1. One of the main grounds of error assigned is the court allowing the evidence of the written agreement between Bessman and Hawkins, as to the terms of consignment, the collateral, etc., as against these plaintiffs, who claimed to be innocent holders for value of this note sued upon, and the first question is as to the position held by these plaintiffs as to these equities claimed to exist between Bessman and the defendants. It is true these plaintiffs hold as indorsees, and presumptively received the paper before due from Bessman, and if there was no circumstance or fact apparent on the paper or otherwise to put a prudent man upon his guard in the purchase of this paper, they would stand as *bona fide* holders for value, and would be protected against these defences. One who purchases a paper held as a collateral security before due, *bona fide* and for value, takes it free from the equities between the maker and the payee. He stands upon the same footing of any other innocent purchaser. 3d Kelly, 47; 4 *Ga.*, 144; 2d Kelly, 106; 18 *Ga.*, 650.

But was there nothing on the face of this paper to excite inquiry on the part of a prudent man? The face of the paper disclosed the pregnant fact—presumed to have been placed there when executed, "To be held as collateral." There were but two contracting parties to this paper when plaintiffs purchased it—Bessman and the defendants. The plaintiffs purchased from Bessman with a knowledge that he held it and was to continue to hold it as collateral. That there was an indebtedness between Bessman and the defendants, and this note was given and received as collateral for that debt. The plaintiffs received it with this notice: "Any circumstance which would place a prudent man on his guard in purchasing negotiable paper shall be

sufficient to constitute notice to a purchaser of such paper before it is due." Code, §2790. If these plaintiffs had notice that this paper was to be held as a collateral, was it not their duty to inquire, and failing to do so, can they be said to be innocent holders? We think not, but they hold subject to all the defences and equities existing between Bessman and the defendants. So the judge below ruled, and we think, correctly.

2. What, then, was the defence filed? It was, the note was given as a collateral on account of goods turned over to John L. Hawkins, and to secure him, Bessman, in the payment of any money received by John L. Hawkins for said goods, and defendants claimed Hawkins had fully accounted for said goods and no money of the plaintiff remained in his hands unaccounted for. This was a good defence, if sustained by the proof. But the evidence shows that in 1879 John L. Hawkins was in default and indebted for said goods to the amount of $2,800, and to account for this default there was shown accounts due and unpaid for said goods sold by John L. Hawkins only about $1,700 in amount, and some of those it appears, were claimed by the debtors to have been paid. Still, there was a balance of over one thousand dollars not accounted for not embraced in the accounts, and therefore must have been received in money, and this collateral was pledged to "secure the payment of any money received on account of said sales."

The jury seem to have determined that John L. Hawkins was in default and found against him, but we cannot comprehend how, under the pleadings and evidence, they could have discharged Samuel Hawkins. If the whole admitted indebtedness of John L. Hawkins was $2,800, and he could produce accounts uncollected for only $1,700, the conclusion is irresistible that the balance due was for money collected and unaccounted for, and for this balance, even according to the literal construction given by the court below of this contract, which we do

not say was correct, there was still a balance in money for which both defendants were liable, under the proofs submitted, of over $1,000.

It will be noted Samuel Hawkins filed no plea distinct and separate from that of his brother—nothing to place him on a different plane of liability from that of John L. Hawkins.  Conceding, as seems to have been the view taken of the case below, that Samuel Hawkins was only to be liable for moneys received and not accounted for, still we think the evidence shows that there was a balance due besides the accounts in evidence, and this balance was presumed to be in money in the absence of any proof to the contrary.  We are of opinion, therefore, the verdict in favor of Samuel Hawkins was contrary to the evidence, and that the court erred in not granting a new trial.

Judgment reversed.