## Commonwealth, Appellant, v. Pure Oil Co. et al.

Argued January 12, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*William A. Schnader,* Attorney General, with him *Harris C. Arnold,* Assistant Deputy Attorney General, for appellant.—The legislature has not only failed to exempt the appellee, but has evidenced its intent to impose the tax upon it: Pittsburgh v. Sterrett Subdistrict, 204 Pa. 635; Com. v. P. R. T. Co., 287 Pa. 70; Allegheny Co. v. McKeesport Diamond Market, 123 Pa. 164; Chadwick v. Maginnes, 94 Pa. 117; Erie Co. v. Water Works, 113 Pa. 368; Phila. y. Barber, 160 Pa. 123; Mercersburg College v. Boro., 53 Pa. Superior Ct. 388; Wilkes-Barre Deposit & S. Bank v. Wilkes-Barre, 148 Pa. 601; Com. v. Chester, 123 Pa. 626; Directors of the Poor v. School Directors, 42 Pa. 21; Wilkinsburg Boro. v. School Dist., 298 Pa. 193.

*Samuel A. Goldberg,* with him *Wolf, Block, Schorr & Solis-Cohen* and *Douglass D. Story,* for Pure Oil Company, appellee.—Under the provisions of the act the tax is to be paid by the purchaser, the City of Philadelphia, and not by the dealer: United States v. Perkins, 163 U. S. 625; Directors of Poor v. School Directors, 42 Pa. 21; Pittsburgh v. Sterrett Subdistrict School, 204 Pa. 635; Wilkinsburg Boro. v. School District, 287 Pa. 193.

The liquid fuels tax is a property tax.

The exception in the act of the United States Government and its instrumentalities and all transactions in interstate commerce are not sufficient to indicate that it was intended to include the State or its political subdivisions: Schuylkill County Poor Directors v. School Directors, 42 Pa. 21; Erie Co. v. Erie City, 113 Pa. 360.

*G. Coe Farrier,* with him *T. B. K. Ringe, Ernest Lowengrund,* Assistant City Solicitor, and *Augustus Trask Ashton,* City Solicitor, for the City of Philadelphia, intervening appellee.—The Supreme Court of the United States has ruled that an act imposing a state tax on liquid fuels, which does not expressly exclude liquid fuels used by the United States or any of its instrumentalities

and liquid fuels used in interstate commerce is unconstitutional: Helson & Randolph v. Kentucky, 279 U. S. 245; Panhandle Oil Co. v. Miss. ex rel., 277 U. S. 218.

The City of Philadelphia, as a political subdivision of the Commonwealth, is not subject to taxation under the provisions of the Act of May 1, 1929, P. L. 1037: Directors of Poor v. School Directors, 42 Pa. 21; Erie Co. v. Erie, 113 Pa. 360; Wilkinsburg Boro. v. School Dist., 298 Pa. 193.

*John H. Stone* and *Brown & Williams,* for the Atlantic Refining Co., filed a printed brief.

OPINION BY MR. JUSTICE SIMPSON, March 16, 1931:

The fundamental question involved in this case is whether the City of Philadelphia is required to pay the tax per gallon provided by the Act of May 1, 1929, P. L. 1037, on all gasoline purchased and consumed by it in the performance of its governmental functions as an agent of the Commonwealth.

Defendant sold to the city a large quantity of gasoline during March, 1930. The city refused to pay the four cents per gallon specified in the statute. The State settled an account against defendant on the theory that it should have collected the tax from the city. In due course, defendant appealed to the Court of Common Pleas of Dauphin County, which decided that for gasoline used for the purpose stated, the city was not liable, and hence defendant could not be required to pay the sum assessed against it. The Commonwealth appealed. The judgment must be affirmed.

Much of the Commonwealth's argument is based on the proposition that this is an excise tax and not a tax on property. The court below held it was the latter, and with its conclusion we agree. The title of the statute is "An act imposing a state tax on liquid fuels," etc. It does not express an intention to tax anything else. If, then, we were to construe the act as providing for a tax

of any other character, it would violate article III, section 3, of the state Constitution, which requires that the subject of a statute must be "clearly expressed in its title": Union Passenger Ry. Co.'s App., 81* Pa. 91, 94, 95; Provident L. & T. Co. v. Hammond, 230 Pa. 407, 413; Spangler's Est., 281 Pa. 118. To avoid this result, we must, if reasonably possible, so construe it as to make it constitutional (Com. ex rel. v. Snyder, 279 Pa. 234; Fluke v. Lang, 283 Pa. 54), and this we can readily do by treating it as exactly what it says it is: "a state tax on liquid fuels," and therefore a property tax.

Fortunately, the body of the statute likewise requires it to be so construed. An ingenious argument to the contrary was made by taking scattered excerpts from other portions of the act, but when the provision which imposes the tax is considered, its character is precisely the same as expressed in the title. Section 3 (P. L. 1039) says: "a state tax......is hereby imposed and assessed upon all liquid fuels sold by dealers in this Commonwealth......and upon all liquid fuels used within this Commonwealth by consumers when no such tax has been collected thereon by a dealer," etc., etc. There is no pretense in this that the tax is assessed upon the vendor for the privilege of carrying on his business, and, indeed, this would be impossible where it is assessed on gasoline purchased outside of the State. Section 9 of the act (P. L. 1042) provides that "The tax imposed by this act shall be paid by the person......purchasing liquid fuels from dealers for his own use......or by the person......using liquid fuels, upon which no tax has been collected by a dealer." It follows that the tax is a property tax, assessed against the property itself, and payable by its owner at the time of the purchase. It is not correct, therefore, to assert, as appellant repeatedly does, that it is a tax "imposed on the privilege of transferring property"; nor that the gasoline is "taxed before it becomes the property of a municipal purchaser." Nor is it accurate to say that the "reasoning upon which ex-

emptions have been presumed in connection with taxes on real estate has no application to the facts and circumstances here involved." On the contrary, each is a tax on the property of the municipality, and each takes from it money which would otherwise be used for governmental purposes, thereby pro tanto disabling it from properly performing its public duties, or compelling it to raise money from some other source in order to be able to pay this tax to the State, whose agent it is in the performance of those public duties. It is not necessary, therefore, to consider what answer would have to be given to the fundamental question stated at the beginning of this opinion, if the tax under consideration were an excise tax.

What, then, is the true construction of the act on the question of whether or not the tax is payable by municipalities in the performance of their governmental functions, in view of the fact that they are not expressly charged with the payment thereof, nor expressly exempted therefrom? At this late day, the answer thereto cannot be seriously disputed. We have many times said that while the State may, by a general statute, tax subordinate governmental agencies in matters affecting the performance of their governmental duties, the presumption is that this was not intended, and nothing short of an expressed or necessarily implied purpose to tax them will suffice to make them liable therefor. The legislature knew, for it was bound to know, of our oft-repeated statement to that effect; hence its failure to express its intention to impose the tax, in the act under consideration, can only mean that it did not intend to impose it under the circumstances stated. That the presumption is as above expressed, so clearly appears in a number of cases, including Directors of the Poor of Schuylkill County v. School Directors of N. Manheim Twp., 42 Pa. 21, 24-5; County of Erie v. City of Erie, 113 Pa. 360; Pittsburg v. Sterrett Subdistrict School, 204 Pa. 635; Wilkinsburg Boro. v. School District, 298 Pa. 193; Robb

v. Phila., 25 Pa. Superior Ct. 343, and is so well known, that it is not necessary to quote from them.

The Commonwealth contends, however, that, in the instant case, this presumption is overcome, under the maxim expressio unius est exclusio alterius, by the fact that section 3 of the act excludes from its purview "liquid fuels purchased, received or consumed by the United States, or any department, board, commission, or other agency or instrumentality thereof" and also "transactions in interstate or foreign commerce," and does not expressly exempt municipalities when acting in their governmental capacities. The fact stated is true, but no such inference can properly be drawn from it. It would probably be conceded that the maxim would not apply if a prior statute provided that, in all future taxing enactments, general words should not be held to apply to municipalities when acting in their governmental capacities, but, in order to include them, this must be stated expressly, and that, in the later act under consideration, others were exempted but nothing was said as to exempting the municipalities. This is substantially the present situation. Over and over again we have said just that thing as to all present and future taxing statutes, and, as already stated, the legislature was bound to know this, and to govern itself accordingly. It follows, that the maxim cannot be held to apply in such cases as the present, and so it was said, in effect, in County of Erie v. City of Erie, 113 Pa. 360. There it was sought to overcome the presumption by a reference to article IX, section 1, of the Constitution and the legislation passed in pursuance of it, which specified what classes of property were exempted from taxation, that used by a municipality not being among them. We there said (page 367) : "The provision of [article IX] section 1 [of the Constitution] cannot operate to repeal any preëxisting law exempting public property from taxation, because there was no such law. Such property was not taxable because there was no law which made

it so. It was the absence, not the presence of law which made it nontaxable...... It is true the legislature of 1874 did exercise its power and exempt certain property which does not include this, but the fact still remains that they did not impose any taxation upon this and hence there is none."

Nor is there anything serious in the contention of the Commonwealth growing out of the fact that section 722 of the Vehicle Code, P. L. 905, 949, and section 512 of the Tractor Code, P. L. 1005, 1022,—both also passed at the 1929 sessions of the legislature, and approved by the governor on the same day as the Liquid Fuels Tax Act,—exempted municipalities from the payment of fees for the certificate of title or registration of motor vehicles therein provided. If express exemptions in the statute being construed do not overcome the presumption, surely they will not when appearing in other acts. Especially is this so since, under the Constitution of the State, all interested persons are entitled to know, from the title of each act, what its scope and effect are, and to compel them to go to other statutes to ascertain these things would wholly defeat the constitutional purpose. Moreover, requiring the payment of a fee for a certificate of title or registration is not taxation, and is not within the rule that the intent to tax municipalities is not to be presumed but must be expressly declared.

The Commonwealth's final contention, that the statute must be held to include municipalities, because no machinery is provided to enable the exemption to be applied to the act as we now construe it, is not persuasive. We cannot say the tax is expressly imposed because the legislature has provided no practical method for determining whether or not the gasoline sold is to be used for municipal governmental purposes. Neither does the statute provide a means by which to determine whether or not the gasoline sold is to be used for the benefit of the United States or any of its agencies, or in interstate or foreign commerce, yet the State has found no diffi-

culty in respect to these matters. Administrative meas-
ures for the determination thereof are always within
the scope of the State's powers, and, if reasonable, can-
not be made the subject of successful objection by those
seeking the exemption to which they will be entitled
when the necessary facts are established.

It is perhaps not unimportant to present another con-
sideration bearing on the entire case, though it is not
conclusive. The first Liquid Fuels Tax Act is that of
May 20, 1921, P. L. 1021. It provided that "A state tax
of one cent a gallon, or fraction thereof, is hereby im-
posed on all gasoline sold in this Commonwealth for any
purpose whatsoever, except for the purpose of resale."
This is in substance the assessing clause of the Act of
1929. The Act of 1921 contained no exemptions what-
ever, but in other respects is the embryo of the present
statute. Some seven months after its passage, the then
attorney general advised that, under it, no tax could be
collected for gasoline sold to municipalities: Opinions
of the Attorney General, 1921-22, page 70. The Act of
June 15, 1923, P. L. 834, contains the same clause im-
posing the tax, and adds "an additional emergency tax
of one cent a gallon, or fraction thereof," but contains
no exceptions. The Act of May 13, 1925, P. L. 671,
amends the Act of 1923, by continuing the emergency
tax for a further period of two years, but makes no other
changes which are relevant here. The Act of April 14,
1927, P. L. 287, again increases the tax, and extends it to
"liquid fuels used within this Commonwealth by con-
sumers when no such tax had been collected thereon by a
dealer." Its imposing clause is the same as prior stat-
utes, and its only exception is "such transactions in in-
terstate and foreign commerce as are not within the tax-
ing power of the State." This exemption was probably
inserted because of the repeated opinions of the Supreme
Court of the United States stating that such commerce
cannot be taxed by the State. The final act in the series
is that under consideration, and the only additional ex-

emption appearing therein is of "the United States, or any department, board, commission, or other agency or instrumentality thereof," and the reason for this admittedly was the decision on May 14, 1928, in Panhandle Oil Co. v. Mississippi ex rel. Knox, Attorney General, 277 U. S. 218.

It is stated in appellee's brief, and not denied, that under none of the prior acts was any attempt made to tax the gasoline purchased by municipalities, probably because of the foregoing opinion of the attorney general. This is not admitted of record or proved in the case, and is, therefore, but a conjecture, though a probable one. It is certain, however, that if, under the Act of 1921, municipalities could not be charged, the addition of the two exceptions referred to furnishes no reason for the application of the maxim expressio unius est exclusio alterius. It is clear also that, if it be true the executive department of the government had constantly construed the Acts of 1921, 1923, 1925 and 1927, as not imposing the tax on municipalities, and if this construction was known to and tacitly acquiesced in by the legislative department, it furnishes a strong reason for sustaining the judgment of the court below. These two "ifs," however, in the absence of the necessary proofs, leave this contention as a factor not to be considered on the present appeal. For the same reason we cannot give any effect to the statement, which we are told is true, that the statute under consideration was drawn by two attorneys connected with the department of revenue of the state government, who, of course, knew of the decision of the attorney general, supra, but did not, so far as we are advised, communicate their knowledge to the legislature.

Perhaps we should add that we have intentionally refrained from considering the conflicting decisions in other jurisdictions, because every point involved in this case can readily be resolved by our own prior opinions.

The judgment of the court below is affirmed.