(No. 5642. October 29, 1931.)

INDEPENDENT SCHOOL DISTRICT, CLASS A, No. 1, CASSIA COUNTY, STATE OF IDAHO, Respondent, v. EMMITT PFOST, Commissioner of Law Enforcement, State of Idaho, and BURLEY HOME OIL COMPANY, a Corporation, Appellants.

[4 Pac. (2d) 893.]

Fred J. Babcock, Attorney General, and Maurice H. Greene, Assistant Attorney General, for Appellants.

Wolfe & Nielson, for Respondent.

McNAUGHTON, J.—In this case the school district seeks to enjoin the Commissioner of Law Enforcement of the

state of Idaho and Burley Home Oil Company from collecting from it the gasoline tax provided for in chapter 172 of the 1923 Session Laws and amendatory acts.

The defendants demurred to the complaint. The demurrer was overruled. The defendants not desiring to plead further, judgment in conformity with the allegations and prayer of the complaint was entered against them. They appeal.

The law points relied upon in behalf of the school district and exhaustively and carefully briefed by both sides may be classified as follows. It is claimed: (1) that the law does not specify school districts or municipal corporations and was not meant to require a tax on gasoline used upon the highways by them; (2) that the tax is a license tax attempted to be enforced against the express inhibition contained in sec. 2, art. 7, of the Idaho state Constitution; (3) that if it is not a license tax it is in contravention of the methods of taxation prescribed by sec. 2, art. 7, of the Constitution, which authorizes only three methods of taxation, to wit: a property tax, a license tax and a *per capita* tax; (4) that the tax is an attempt to divert the school funds and is prohibited by sec. 3, art. 9 of the Constitution; (5) that the act is contrary to the spirit of our Constitution in that it is an attempt to tax one agency of the state for the benefit of another; that is, it is an attempt to withdraw and use school funds for the benefit of the state highways.

These points involve the interpretation of certain provisions of the gasoline tax law of Idaho and provisions of the state Constitution relating to taxation and school funds.

The purpose of the law and the character of the tax are disclosed by the following excerpts from the act as amended:

"Sec. 2. . . . . That in addition to the taxes now provided for by law, each and every dealer, as defined in this Act, who is now engaged or who may hereafter engage in his own name, or in the name of others, or in the name of his representatives or agents in this State, in the sale of

motor fuels herein defined, shall, not later than the fifteenth day of each calendar month beginning with the second calendar month after this Act has become effective, render a statement to the Commissioner of Law Enforcement of the State of Idaho of all motor fuels sold and/or used by him or them in the State of Idaho during the preceding calendar month, and pay a license tax of five cents per gallon on all motor fuels as shown by such statement in the manner and within the time hereinafter provided." (Sess. Laws 1923, chap. 172, sec. 2, as amended by Sess. Laws, Extraordinary Session of 1929, chap. 2, sec. 2.)

"Sec. 10. Any person, firm or corporation who shall buy and use any motor fuels as defined in this Act for the purposes of operating or propelling stationary gas engines, tractors, or motor boats, or who shall purchase or use any of such fuel for cleaning or dyeing or other commercial use of the same except in motor vehicles operated or intended to be operated upon any of the public highways of the State of Idaho, and who shall have paid any tax on motor fuels levied or directed to be paid as provided by this Act, either directly by the collection of such tax by the vendor from such customer, or indirectly by adding the amount of such tax to the price of such fuels and paid by such consumer, shall be reimbursed and repaid the amount of such tax paid by him upon presenting to the Commissioner of Law Enforcement of the State of Idaho an affidavit accompanied by the original receipts showing such purchase, . . . . "

" . . . . The Commissioner of Law Enforcement may, in his discretion require each claimant for a refund under this Act to make out his claim upon blanks to be prepared and furnished by the Commissioner of Law Enforcement, and which blanks shall have plainly printed thereon the provisions of Section 10–A of this Act." (Sess. Laws 1923, chap. 172, sec. 10, as amended by Sess. Laws 1931, chap. 68, sec. 3.)

Section 4, chap. 172 of the Session Laws of 1923 as amended by sec. 1, chap. 68 of the Session Laws of 1931,

provides that the taxes collected under the act shall be paid into the State Highway Fund.

The points raised involve the construction of the following provisions of the state Constitution:

"Sec. 2, art. VII. The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax (both on natural persons and upon corporations, other than municipal corporations, doing business in this state); also a per capita tax: Provided, The legislature may exempt a limited amount of improvements upon land from taxation."

"Sec. 3, art. IX. The public school fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur."

(1) Did the legislature intend collection from school districts? The act requires that all sales of gasoline be reported for taxation. Section 10, defining exemption, makes no exception in favor of gasoline purchased and used in propelling vehicles on the highways by school districts or any other municipal corporations. The provisions of the act leave no doubts in our minds that the clear policy of the law is simply to require, so far as the legislature can, that all using motor vehicles on the highways of this state shall contribute to their maintenance in the proportion of that use. This enforced contribution is measured by the amount of gasoline consumed in that use.

(2) Are school districts exempted by the Constitution from this tax? It is claimed that this is a license tax so designated by the legislature and as such is limited by the Constitution to natural persons and corporations, other than municipal corporations, doing business in this state.

In determining the type or kind of tax, the substance of the law, rather than a designation or name given it by the legislature, must be considered. The constitutional inhibition of a license tax against municipal corporations is against a tax of that nature, not against an excise or some other tax not in fact a license tax.

In *Educational Films Corp. v. Ward*, 282 U. S. 379, 51 Sup. Ct. 170, 171, 75 L. ed. 400, the United States supreme court said:

"But the nature of a tax must be determined by its operation rather than the particular descriptive language which may have been applied to it.

" . . . . neither state courts nor legislatures, by giving a tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect . . . . This court must determine for itself by independent inquiry whether the tax here is what, in form and by the decisions of the state court, it is declared to be."

"The character of a tax as a property tax or a license tax or occupation tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act or ordinance, and not by the name by which it is described, . . . . " (37 C. J. 172, sec. 9.)

Manifestly the nature of the tax in its operation is the test by which we must determine whether or not it is one prohibited. Whether the legislature were to specifically say it is or is not such a tax would not alter the fact of the matter and would not relieve us from determining its true nature in construing the Constitution as permitting it or as against it. We must therefore examine the essentials or characteristics of a license tax such as the Constitution limits to natural persons or corporations doing business in the state. The authorities have examined and treated of the

matter extensively and have pretty generally agreed upon the fundamental characteristics of a license.

In *Sinnott v. Davenport*, 22 How. (U. S.) 227, 240, 16 16 L. ed. 243, the United States supreme court defined license as follows:

"The word *'license'* means permission or authority; and a license to do any particular thing is a permission or authority to do that thing."

And in *Hodge v. Muscatine County*, 196 U. S. 276, 25 Sup. Ct. 237, 238, 49 L. ed. 477, said:

" . . . . The charge imposed by Sec. 5007 is said to be 'clearly not a license, for it does not grant permission to do an act which, without such permission, would be invalid . . . . ' This being the latest expression of opinion of the supreme court of Iowa, we accept it for the purposes of this case."

In *Cache County v. Jensen*, 21 Utah, 207, 61 Pac. 303, 305, the Utah court said:

"License, in common parlance, implies permission to do something which may not be done without the license. In this sense we are to understand the word was used in the constitution and statutes, unless the context indicates a different or more comprehensive meaning. 'The object of a license,' says Mr. Justice Manning in *Chilvers v. People*, 11 Mich. 43, 'is to confer a right that does not exist without a license.' A mere tax imposed upon a business or occupation is not a license, unless the levy confers a right or privilege as to the business which would not otherwise exist."

The supreme court of Kansas said in the case of *Yount v. Denning*, 52 Kan. 629, 35 Pac. 207, 208:

"The term 'license' is defined by Webster: 'Authority or liberty to do or forbear any act; especially, a formal permission from the public authorities to perform certain acts; a grant of permission: as, license to preach, practice medicine, sell gunpowder, and the like.' A license tax differs from other forms of taxation mainly in that it is imposed

as a condition to entering upon the conduct of the business.''

In *Youngblood v. Sexton*, 32 Mich. 406, 20 Am. Rep. 654, the Michigan court, Justice Cooley writing the opinion, analyzes the subject. His analysis has been quite generally adopted by the courts as sound. It is as follows:

''Does, then, a tax upon the traffic in liquors come within the condemnation of this provision of the constitution, as being equivalent to a license of that traffic? Is it the same in legal effect, or is it the same according to the popular understanding of the term license? This is the question that presents itself for decision in this branch of the case.

''The popular understanding of the word license undoubtedly is, a permission to do something which without the license would not be allowable. This we are to suppose was the sense in which it was made use of in the constitution. But this is also the legal meaning. 'The object of a license,' says Mr. Justice Manning, 'is to confer a right that does not exist without a license.' *Chilvers v. People,* 11 Mich. 43, 49. Within this definition, a mere tax upon the traffic cannot be a license of the traffic unless the tax confers some right to carry on the traffic which would otherwise not have existed. We do not understand that this is the case here. The very act which imposed this tax repealed the previous law, which forbade the traffic and declared it illegal. The trade then became lawful, whether taxed or not; and this law, in imposing the tax, did not declare the trade illegal in case the tax was not paid. So far as we can perceive, a failure to pay the tax no more renders the trade illegal than would a like failure of a farmer to pay the tax on his farm render its cultivation illegal. The state has imposed a tax in each case, and made such provisions as has been deemed needful to insure its payment; but it has not seen fit to make the failure to pay, a forfeiture of the right to pursue the calling. If the tax is paid, the traffic is lawful; but if not paid, the traffic is equally lawful. There is consequently nothing about the case that appears to be in the nature of a license. The state has pro-

vided for the taxation of a business which was found in existence, and the carrying on of which it no longer prohibits; and that is all."

The supreme court of Ohio, after adopting the definition by Justice Manning and analysis by Justice Cooley, draws the following conclusions, in *Adler v. Whitbeck*, 44 Ohio St. 539, 9 N. E. 672, 675:

"The distinction between the tax on the business and what might be termed a license, is that the former is enacted by reason that the business *is carried on,* and the latter exacted as a condition precedent to *the right to carry it on.* In the one case the individual may rightfully engage in and carry on the business without paying the tax; in the other he cannot."

The case of *Shanks v. Kentucky Oil Co.*, 225 U. S. 303, 8 S. W. (2d) 383, 385, was a gasoline tax case and the court's definition of an excise tax in its original and limited sense as distinguished from a license tax is helpful. It is:

"The tax levied by this act is an excise. In *State Tax Com. v. Hughes Drug Co.*, [219 Ky. 432, 293 S. W. 944], *supra*, we quoted with approval the following from 26 R. C. L. 34:

" 'Excises in their original sense, were something cut off from the original price paid on a sale of goods as a contribution to the support of the government.'

"A license tax or tax for the privilege of doing business is sometimes referred to as an excise, as are all forms of taxation which are not burdens laid directly upon persons or property. The three-cent tax imposed on gasoline by the 1924 act, however, is an excise in the original and limited sense, being 'something cut off from the original price paid on a sale of goods, as a contribution to the support of the government.' A careful reading of the act convinces us that the tax imposed was not intended as a license tax or tax for the privilege of selling gasoline in this state."

In Idaho the legislature was confronted with this condition. It found a demand for better roads incident to the use of rapid motor-driven vehicles. It found an extensive

use of gasoline on its highways in this traffic. Without affecting the legality of that use it imposed a tax upon the use and adopted a method of collecting the tax without exacting any license or permit. The tax having no relation to any license granted or required, it is in no sense a license tax limited by the Constitution to persons and corporations doing business in the state.

█ (3) In imposing taxes is the legislature limited to property taxes, license taxes and *per capita* taxes? It is sometimes said that the constitutional methods of taxation are those mentioned in sec. 2, art. 7, of the Constitution, but this is misleading, for the legislature is not limited by the Constitution to the methods mentioned.

This court in *Idaho Power & Light Co. v. Blomquist*, 26 Ida. 222, Ann. Cas. 1916E, 282, 141 Pac. 1083, 1088, said:

"The constitution of the state of Idaho is a limitation upon the legislative power in all matters of legislation, and is not a grant of power. The legislature has plenary power in all matters of legislation except as limited by the constitution."

In *Williams v. Baldridge*, 48 Ida. 618, 284 Pac. 203, 206, the court said:

"The power of the legislature to tax or to exempt from taxation is plenary save only as it may be limited by the constitution of this state or the United States. Unless, therefore, this right has been limited either by the constitution of this state or the constitution of the United States, the legislature unquestionably had a right to exempt from taxation certain property of power companies in this state."

And in *Achenbach v. Kincaid*, 25 Ida. 768, 140 Pac. 529, 533, said:

"As to the question of taxation: The legislature possesses plenary power, except as such power may be limited or restricted by the constitution. It is not necessary that the constitution shall contain a grant of power to the legislature to deal with the question of taxation. It is sufficient proof of its power if there be found in the constitution no prohibition against what the legislature has attempted to do."

In a case where the same question arising here arose concerning the methods of taxation mentioned in sec. 2, art. 7, of the Constitution, this court said, in *Re Kessler*, 26 Ida. 764, Ann. Cas. 1917A, 228, 146 Pac. 113, 114, L. R. A. 1915D, 322:

" . . . . Certainly the constitution does not expressly prohibit the people of Idaho from raising revenue in the manner provided in ch. 179 of the Session Laws of 1913, and while it is true that there are three methods of raising revenue expressed in sec. 2, art. VII of the Constitution, we cannot infer from this that an implication arises prohibiting the state from raising revenue pursuant to its inherent power to do so in any other manner its legislature may see fit to adopt."

The tax in question is by a method other than those mentioned in sec. 2, art. 7, of the Constitution but is not on that account unconstitutional, because it is not necessary that the Constitution expressly authorize the legislature to enact each and every kind of tax adopted by it. An act is legal when the Constitution contains no prohibition against it.

(4) Does the gasoline tax violate the constitutional protection to the principal and interest of the school endowment funds? We think that it does not, because neither principal nor interest of those funds can be expended for gasoline used on the highways. Under the constitutional provision the principal of the funds cannot be used at all; it must remain intact. As to the interest, it may only be used in the maintenance of the schools. It is not to be used for school equipment or for affording traveling accommodations to school children. The difference between using the funds for supporting or maintaining a school as required by this section of the Constitution and in furnishing accommodations and equipment for the school is pointed out in *Roach v. Gooding*, 11 Ida. 244, 81 Pac. 642. The duty of affording busses for the children in going to and returning from school is an expense which the people of the district must bear. Neither the principal nor interest of the school endowment funds is or could be used for that purpose. As

those funds cannot be expended in operating vehicles upon the highways, they are not within the reach of this tax and sec. 3, art. 9 of the Constitution has no application.

 (5) May the state on behalf of its highway department demand an excise tax on gasoline consumed in another department in carrying on its functions?

A property tax cannot be levied in Idaho against the property of the United States, the state, counties, towns, cities and other municipal corporations because such property is exempted by sec. 4, art. 7, of the state Constitution. This exemption of property from taxation where not expressed in the Constitution or legislative act will generally be assumed in the absence of the expression of a clear intent not to exempt it. The reason for the exemption, express or presumed, is stated by Cooley on Taxation, 4th ed., vol. 2, sec. 621, as follows:

"Some things are always presumptively exempted from the operation of general tax laws because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for public purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demands of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the Legislature would ever purposely lay such a burden upon public property, and therefore it is a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the constitution or a statute."

However, this rule applies only to property taxation, and does not apply to excise or privilege taxes. (*City of Port-*

*land v. Kozer,* 108 Or. 375, 217 Pac. 833; *Crockett v. Salt Lake County,* 72 Utah, 337, 62 A. L. R. 667, 270 Pac. 142.)

The reasoning for the presumption of exemption fails when applied to a tax like that under consideration because the agencies involved are not both supported by property taxation. Where two agencies of the state are supported by like property taxes, taxing the property of one in behalf of the other ultimately draws the entire revenue from the privately owned property taxed for the support of both and is an idle act, but manifestly such is not the case when one agency is wholly or mainly supported by property taxes and the other wholly or mainly by excise taxes.

The fundamental justice and policy of the gasoline tax in this state is the requirement that without exemption the burden of maintenance of the highways is placed directly upon those benefited by that maintenance. If exemptions were granted, then this equitable placement of the burden would to that extent be destroyed. To that extent the individuals using the highways as a class, would alone pay for a benefit enjoyed by the general public through its agencies.

True, the federal supreme court has held a gasoline tax similar in general plan to that adopted in this state cannot be enforced against federal agencies using the roads, but its ruling is on the ground that a state has no power to tax an instrumentality of the federal government. (*Panhandle Oil Co. v. State of Mississippi, on Relation of R. H. Knox, Attorney General,* 277 U. S. 218, 56 A. L. R. 583, 48 Sup. Ct. 451, 72 L. ed. 857.) The act, though it does not exempt federal agencies using the highways, cannot include them, but is not unconstitutional on that account.

We are convinced that in the gasoline tax acts in question, the legislature intended to exempt none it has power to include who use motor vehicles upon the highways. The Constitution does not prohibit a tax of this nature nor exempt municipalities from its payment. We can find no basis in fact, or reason in law for reading into the act a presumption of exemption of school districts or other muni-

cipalities. The tax does not affect the school endowment funds.

It follows that the judgment must be reversed, with directions to sustain the demurrer.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.

Petition for rehearing denied.