(No. 6380. March 25, 1937.)

STATE on the Relation of EMMITT PFOST, Commissioner of Law Enforcement, Appellant, v. BOISE CITY, a Municipal Corporation, Respondent.

[66 Pac. (2d) 1016.]

J. W. Taylor, Attorney General, Bert H. Miller, former Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Appellant.

Thornton D. Wyman and Z. Reed Millar for Respondent.

GIVENS, J.—Boise City purchased at Linnton, Oregon, imported and used 10,066 gallons of gasoline in motor ve-

hicles operated by Boise City allegedly "upon the public highways and streets within the State of Idaho" upon which it refused to pay the State the tax of $.05 per gallon as demanded by appellant under chapter 46, 1933 Session Laws, page 60, on the ground that it was not a "dealer" as defined in said chapter, and therefore not subject to the provisions thereof, and that the legislature did not intend by the act to have the word "dealer" apply to a municipality, on which theory the trial court sustained a general demurrer to appellant's complaint.

The State concedes in its brief that section 2 of the act requiring a permit and the payment of, in effect a license fee of $5 therefor, does not apply to the city as otherwise violative of section 2, article 7 of the Constitution.

Section 3 of the act provides as follows:

"Every applicant for a dealer's permit, except municipal corporations importing motor fuels solely for their own use, shall file with the commissioner a bond. . . . . "

It will be noted that the bond is not required of every dealer, but of every "applicant" for a dealer's permit. The State having conceded that the permit provision does not apply to a municipal corporation, section 3 does not apply to a municipal corporation because in the first instance, if a permit could not be required, it could not be legally issued, and the city therefore could not be an effective applicant therefor. In the second place, where the city imports fuel for its own use, the statute expressly states no bond is required.

Sections 4, 6, 7, 8, and 9, provisions dealing with phases of the permit and bond sections, are eliminated from the operation of the act as to municipalities because their supporting conditions precedent do not apply.

Section 20 subjects a dealer, which if the act applies to, includes municipal corporations, for violation of the act, to criminal prosecution punishable by fine and imprisonment. Conceding without deciding that the fine might be applicable to a municipal corporation, there is no statute fixing the criminal responsibility of the officers of a municipal corporation for the acts of a municipal corporation, or at least none has been called to our attention, whereby such officer or officers could be incarcerated as perhaps officers of a private corpora-

tion could be. To consider that a municipal corporation therefore comes within the definition of ''dealer'' as stated by the act, and under the provisions of the act, other than those indicated perforce eliminated, we must consider that the legislature would have passed the act as thus reduced, i. e., without the permit, bond, and penal provisions, which we should do unless such provisions are so inseparably a part of the entire act, that the legislature would not have passed the act making the tax applicable to gasoline imported and used by a municipal corporation without these enforcing and regulatory sections, and since other provisions entirely adequate to enforce payment remain, as demonstrated by this very action herein, and the central and main object of the act is the $.05 tax, credited in the main to the state highway fund, such eliminations do not as to this phase defeat the balance of the statute, if applicable. (*Johnson v. Diefendorf*, 56 Ida. 620, 57 Pac. (2d) 1068.)

Prior to this act, the statute of 1923 as amended in 1927 and 1929 was held to authorize the collection by the sellers of gasoline within the State, of a similar gallonage imposition considered an excise tax, from municipalities. (*Independent School Dist. v. Pfost*, 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820.) It is true there was no question there of the municipality importing gasoline from without the State. The imposition of the tax however though indirect, because paid in the first instance by the dealer, but nevertheless an ultimate exaction from the municipality as consumer, was held not to be unconstitutional. If the city's construction of the 1933 act be given force and effect, it results in this situation: That a municipality which buys its gasoline within the State pays, to the dealers and through the dealers, the State $.05 per gallon tax. If as in the case at bar, the municipality buys the gasoline from without the State, it does not so pay the tax. Did the legislature intend this result? South Dakota, construing a somewhat similar statute and considering the precise result, has held to the contrary. *State v. City of Sioux Falls*, 60 S. D. 330, 244 N. W. 365, quoting with approval *City of Portland v. Kozer*, 108 Or. 375, 217 Pac. 833, which was in turn quoted with approval by this court in *Independent School Dist. v. Pfost*, 51 Ida. 240 at 253, 254, 4

Pac. (2d) 893, 84 A. L. R. 820, distinguished by this court in the consideration of the kilowatt tax in *City of Idaho Falls v. Pfost*, 53 Ida. 247, 23 Pac. (2d) 245, and the construction of the 1923 act set forth by the court in *Independent School Dist. v. Pfost, supra,* was clearly correct:

"A property tax cannot be levied in Idaho against the property of the United States, the state, counties, towns, cities and other municipal corporations because such property is exempted by sec. 4, art. 7, of the State Constitution. This exemption of property from taxation where not expressed in the Constitution or legislative act will generally be assumed in the absence of the expression of a clear intent not to exempt it. . . . .

"However, this rule applies only to property taxation, and does not apply to excise or privilege taxes. . . . . "

*Crockett v. Salt Lake County,* 72 Utah, 337, 270 Pac. 142, 60 A. L. R. 867, where a statute quite similar in terms was considered, held the statute applicable to the municipality on the theory of *City of Portland v. Kozer, supra,* followed with approval in *Independent School Dist. v. Pfost, supra,* and distinguished as to the statute considered in *City of Idaho Falls v. Pfost, supra,* at page 262 (Idaho Report):

"Appellant relies on *Independent School Dist. v. Pfost, supra,* and the similarity of the language used, as declaratory by the court of the applicability of this statute to municipal corporations. It will, however, be observed that the requirements of sec. 3 herein must apply, if at all, to municipal corporations, while in the gas tax there construed, the requirements of sections similar, it is true, to sec. 3 herein, were held to apply not to the municipal corporation as actor, but as purchaser, so there is no inconsistency, the holding therein not being controlling or pertinent here. Furthermore, the tax there considered went into the road fund; here this tax is a substitute, in so far as it can be in amount, for a property tax, which at least raises a doubt as to the intent of the legislature to have this tax apply to municipal corporations, when thus viewed, considering sec. 4, art. 7. We do not follow this observation, nor depend upon it further than as it affects this one phase, i. e., legislative intent.

"Payment for the gas purchased by the school district in *Independent School Dist. v. Pfost, supra,* was like the payment indirectly of any tax on any commodity and so given as a ground in *City of Portland v. Kozer.* . . . . "

*State v. City of Des Moines,* 221 Iowa, 642, 266 N. W. 41, under a statute so similar to ours, with the above eliminations, as not to be distinguishable, sustains appellant:

" . . . . it is 'clear from the nature of the mischiefs to be redressed,' and 'the language used,' that municipalities were intended to be included within this statute. What is the language used? *'All* motor vehicle fuel.' This means every gallon or fraction of a gallon, and the law exempts no one except the United States government and its instrumentalities, and this exception is only a conditional one. . . . . The fact that the Legislature intended to include municipalities is emphasized further in section 7, relating to the applicants for distributor's licenses, wherein it is stated that each applicant for distributor's license, *except agencies of the state and municipal corporations in the state or other governmental subdivision of the state,* shall 'file with the Treasurer of State a bond,' etc. . . . .

"The Motor vehicle fuel tax is not a general tax for general purposes, but an excise tax in the nature of a privilege tax, exacted of all users of motor vehicle fuel to propel vehicles upon the highways of this state, for a specific purpose, that of building and maintaining public highways within the state, and should be construed in a way and manner to accomplish the ends which the Legislature intended should be attained."

It is argued however that the application of the rule announced in *City of Idaho Falls v. Pfost, supra,* exempts the city in this: That the city of Idaho Falls was held to be exempt from the payment of the kilowatt tax on electricity generated by the city, whereas other municipalities not generating their own electricity are required to pay, if not directly, indirectly to such private power companies from whom they might purchase electricity, and the argument is made that if the city of Boise, for instance, owned an oil well and produced its own gasoline therefrom, on a parity with the Idaho Falls kilowatt tax case, it would be exempt and there is no differ-

ence in importing gas from without the State laterally and bringing it up vertically from below the ground. The question here however is one solely of legislative intent, which is emphasized by the exemption the legislature has given, in a somewhat similar situation, from the payment of the kilowatt and a proportion of general taxes for electricity used for pumping water for irrigation purposes. (C. S., sec. 3099, and sec. 3099A as added by Laws 1921, chap. 106, sec. 1, subd. 15, and sec. 2, I. C. A., sec. 61–2205, as amended; *Williams v. Baldridge*, 48 Ida. 618, 284 Pac. 203.) The purpose of the last-mentioned statutes was to equalize the pumping burden as between irrigation organizations where they owned their own power facilities, and where they did not and were compelled to buy power.

The legislature has not seen fit to make any such distinction as to the use of electricity by municipalities. Is there a legislative intent in the statute under consideration to exempt municipalities from payment of the gasoline tax where the city buys it without the State? Indeed there is specific and explicit statement to the contrary. Section 1 of the act (1933 S. L., chap. 46, p. 60 at p. 62) paraphrased thus defines a dealer:

"The term Dealer shall include any . . . . individual, firm, co-partnership, association, corporation (both private and municipal) or other group or combination acting as a unit who imports motor fuels into this state. . . . . "

and section 10:

" . . . . In addition to the taxes now provided for by law, each and every dealer, as defined in this Act, shall, not later than the fifteenth day of each calendar month render a statement to the Commissioner of Law Enforcement of the State of Idaho of all motor fuels sold, distributed, and/or used by him or them in the State of Idaho during the preceding calendar month, and pay an excise tax of five cents per gallon on all motor fuels as shown by such statement in the manner and within the time hereinafter provided."

A further distinction between the kilowatt tax case and the case at bar is that the legislature expressly declared therein the kilowatt tax was in aid of lessening the burden of general taxes, I. C. A., sec. 61–2209, and while if roads are to be

maintained, funds have to be provided by some form of taxation or imposition, there is a direct relationship between the gasoline tax and the roads, in that the gasoline is consumed in instrumentalities which use the roads, in other words, it partakes of the nature of a tax for the privilege of using the road. The kilowatt statute, *supra,* did not mention municipalities which the present act does, which is clearly expressive of the legislative intent. There is nothing to indicate the legislature intended by the 1933 act to absolve municipalities from the payment of the gasoline tax as previously applied under the 1923 act declared in *Independent School Dist. v. Pfost, supra.*

It is argued that the city does not use State highways, and that therefore it is being taxed to keep up a State activity without any corresponding benefit to the municipality. Numerous courts however have held that municipalities receive such benefit from the construction and upkeep of surrounding highways as to justify placing upon them part of the burden of construction and maintenance. No city in Idaho is self-sufficient, or could exist without travel to and from and over communicating highways. Furthermore the legislative definition of highways includes "streets." (I. C. A., sec. 48–101 (u); I. C. A., sec. 48–501 (n); I. C. A., sec. 39–101; I. C. A., sec. 39–1501; I. C. A., sec. 39–2101; *Crockett v. Salt Lake County, supra;* 44 C. J. 881–883, secs. 3597, 3599; *Orange State Oil Co. v. Amos,* 100 Fla. 884, 130 So. 707 at 710; *City of Louisville v. Cromwell,* 233 Ky. 828, 27 S. W. (2d) 377; *City of Ardmore v. State,* 168 Okl. 316, 32 Pac. (2d) 728 at 731; *City of Fort Smith v. Watson,* 187 Ark. 830, 62 S. W. (2d) 965 at 966; *State v. City of Des Moines, supra;* and see *Oregon Short Line R. R. Co. v. Pfost,* 53 Ida. 559, 27 Pac. (2d) 877.)

The conclusion therefore is clear that there was no legislative intent to exempt municipalities from payment of the gasoline tax simply because the gasoline is bought without the State whereas if purchased within the State the municipalities would be compelled to pay the tax, and that the tax does not apply to municipalities. (*People v. City and County of Denver,* 84 Colo. 576, 272 Pac. 629.) In so holding we are

not unmindful of *O'Berry v. Mecklenburg County,* 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304, thus commented on in *State v. City of Sioux Falls, supra,* at page 368:

" . . . . A contrary view is indicated in *O'Berry v. Mecklenburg County,* (1930) 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304. In this connection it is interesting to note a subsequent legislative change in North Carolina (section 24, ch. 145, Public Laws N. C. 1931) whereby, in substance, every 'municipality, county, or other political subdivision or agency' is specifically made subject to the act . . . . "

Our conclusion is declared to be the weight of authority by *State v. Woodbury County,* (Iowa) 269 N. W. 449 at 451, citing to sustain such conclusion *Independent School Dist. v. Pfost, supra,* and other authorities *supra.* See also *City of Ardmore v. State, supra,* at pages 735, 736:

" . . . . We recognize that there are decisions at variance with the above authorities. *O'Berry v. Mecklenburg County,* 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304; *Commonwealth v. Pure Oil Co.,* 303 Pa. 112, 154 Atl. 307. Said decisions are based upon a strained construction of the law under consideration therein.

"From a review of the above authorities, we are of the opinion that the 1929 Act levied an excise tax on gasoline consumed within this state by municipalities, and that the exemption contained in section 6, art. 10, of the Constitution was intended by the framers thereof to apply only to *ad valorem* taxes on specific property. That the Legislature has power to impose an excise tax on gasoline consumed by municipalities is fully supported by the above, and, in fact, by almost unanimous authority."

and *State v. Board of County Commrs. of Barton County,* 142 Kan. 624, 51 Pac. (2d) 33 at 35:

" . . . . The motor vehicle fuel tax is not a tax on property. The act providing for it 'creates no property tax, but is a personal liability upon dealers.' *State ex rel. v. Snell,* 127 Kan. 859, 860, 275 Pac. 209. The same question has been considered by other courts where the constitutional provisions were similar to our own, and the same conclusion reached in the following cases: (citing cases).

Under these authorities we are forced to conclude that article 11, sec. 1, of our Constitution, has no application to the motor vehicle fuel tax.''

Judgment reversed.   Costs to appellant.

Morgan, C. J., Holden, Ailshie, and Budge, JJ., concur.