(No. 7279. February 15, 1946.)

UNION PACIFIC RAILROAD COMPANY, a corporation, Plaintiff-Appellant, v. BOISE G. RIGGS, Commissioner of Law Enforcement of the State of Idaho, Defendant-Respondent.

[166 P. (2d) 926.]
(Rehearing Denied March 25, 1946.)

H. B. Thompson, L. H. Anderson and A. U. Miner for appellant.

Frank Langley, Attorney General; and P. J. Evans and Thos. Y. Gwilliam, Assistant Attorneys General, for respondent.

HOLDEN, J.—Appellant is a Utah corporation and for many years prior to the levy of an excise tax on motor fuel was and still is engaged as a common carrier of freight and passengers for hire in the operation of a standard gauge steam railroad, extending, among other places, from Council Bluffs, Iowa, through Idaho to the Pacific Northwest, and from Los Angeles, California through Idaho to points in Montana, together with numerous branch lines both within and without the State of Idaho. Over and upon said line of railroad, particularly in the State of Idaho, appellant operates gasoline-electric propelled motor cars over its rails in the transportation of persons and property for hire, other gasoline propelled motor cars over its rails for the purpose of transporting its employees and supervisors in the performance and supervision of work of construction and maintenance of said line of railroad, and maintains and operates stationary gasoline engines for pumping water and for other purposes incidental to the operation of the railroad, including gasoline propelled tractors on its premises and right-of-way for grading, excavating and other purposes, and for the purpose of operating the aforesaid gasoline propelled gasoline-electric motor cars in the transportation of persons and property, motor cars in the transportation of laborers and supervisors, stationary engines, tractors and other gasoline motor equipment on the premises, rails and right-of-way of appellant (but not upon any of the public highways maintained either in whole or in part by the State of Idaho or any municipality or subdivision of govern-

ment thereof) it purchases and for many years has purchased from points of production outside the State of Idaho, and used and uses, gasoline and motor fuels in excess of fifty gallons. Appellant, however, does not sell and has never sold motor fuel.

The record discloses appellant was at all times and still is "duly authorized to do business in the State of Idaho and is a motor fuel dealer within the definition set forth in Section 1 of Chapter 46 of the 1933 Session Laws, as amended by Chapter 136 of the 1941 Session Laws and is a holder of Motor Fuel Dealer Permit No. 35, issued to it by defendant (respondent) and which permit is now in full force and effect." It appears that up until the effective date of Chapter 194, enacted in 1945, refunds were paid on all motor fuel purchased by appellant and used by it in motor propelled cars, tractors and other vehicles moving upon its tracks, including stationary gasoline engines, and other gasoline motor equipment on the premises, rails and right-of-way of appellant.

This action is prosecuted by the railroad company under the provisions of the Declaratory Judgments Act (Chap. 70, S. L. 1933, p. 113), to obtain a declaration of the rights of the parties.

The facts were stipulated in the trial court substantially as hereinbefore stated, findings of fact and conclusions of law being waived. Upon such stipulation of facts, the court rendered and entered judgment in favor of respondent and against appellant. The appeal to this court is from the judgment.

In 1923, the legislature enacted a Motor Fuel Excise Tax Statute (Chap. 172, S. L. 1923, p. 264). It was amended in 1929 (Chap. 283, S. L. 1929, p. 680) and again in 1931 (Chap. 68, S. L. 1931, p. 117). It was later incorporated in and became a part of Title 48, Chap. 7, 1932 I.C.A. Following that, the 1933 session of the legislature (Chap. 46, S. L. 1933, p. 60), repealed Chapter 7, supra, and enacted a more comprehensive statute, certain sections of which, pertinent here, were thereafter amended, and to which attention will be later directed.

Appellant contends it is entitled to a refund of the one cent per gallon additional tax (Chap. 194, S. L. 1945, p.

309) it paid on motor fuel purchased and used in the operation of its railroad, not in the operation of any vehicle on any highway of the State of Idaho. On the other hand, respondent contends appellant is not entitled to a refund of that tax. Broadly speaking, the record, as well as the contention of the parties, presents the question as to whether one who purchases and uses motor fuel and pays the one cent per gallon additional tax thereon, for instance, railroads in rail operations and farmers in operating farms, for what we will term "non-highway purposes," is entitled to a refund of the tax.

The parties are agreed, in which we are in full accord, statutes in *pari materia* must be construed together. Hence, we turn at once to the applicable sections of the Motor Fuel Excise Statute.

Section 10, amended in 1945 (Chap. 194, S. L. 1945, p. 309), provides:

(Section 10.) "REPORT OF SALES—USE OR DISTRIBUTION BY DEALERS—EXCISE TAX.—In addition to the taxes now provided by law, each and every dealer, as defined in this Act, shall, not later than the fifteenth day of each calendar month render a statement to the Commissioner of Law Enforcement of the State of Idaho of all motor fuels sold, distributed and/or used by him or them in the State of Idaho during the preceding calendar month, and pay an excise tax of * six cents per gallon on all motor fuels as shown by such statement in the manner and within the time hereinafter provided, but the provisions hereof and the tax herein levied, excepting as hereinafter provided, shall not be deemed or construed to apply to sales of motor fuels by a dealer to another dealer for resale; and each and every dealer, in rendering monthly statements, as hereinbefore provided, shall show separately the number of gallons of motor fuels sold by him to other dealers for resale, and the tax on such motor fuels shall be paid by such dealer purchasing the same, as and when thereafter sold, distributed and/or used by him, and as shown by the monthly statements of motor fuels sold, distributed and/or used by him, as hereinbefore provided: provided that all moneys received from the one cent per gallon additional tax herein provided for, shall be placed in the state highway fund and,

held until Federal Funds are available for post-war highway construction, and to be used only for the purpose of matching federal funds for the construction, maintenance, improvement and reconstruction of highways and farm to market roads in the State of Idaho, as provided for in Federal Act or Acts; it is the legislative intent ·that this one cent additional tax is an emergency *nature* (sic. measure) and shall be collected only until March 1st, 1947."

Section 12, amended in 1945 (Chap. 163, S. L. 1945, p. 242), insofar as pertinent here, provides:

(Section 12.) "TIME OF PAYMENT OF EXCISE TAX—DISTRIBUTION OF PROCEEDS—REFUNDS—EXPENSES OF ENFORCEMENT.—Said excise tax shall be paid on or before the fifteenth day of each month, beginning with the first calendar month after this Act becomes effective, to the Commissioner of Law Enforcement, who shall receipt the dealer therefor, and promptly turn over the same to the State Treasurer as are other receipts of his office and the State Treasurer shall place the same in the following funds, to-wit:

"(a). * * *

"(b). An amount equal to twenty per cent of the balance of all such sum or sums as may have been collected shall be placed in the State Highway Treasury Note Redemption Fund, under the provisions of Chapter 3 of the Session Laws of 1929, Extraordinary Session;

"(c). * * *"

And Section 18, also amended in 1945 (Chap. 163, S. L. 1945, p. 243), so far as pertinent here, provides:

(Section 18.) "REFUNDING OF TAX.—Any person who shall buy and use any motor fuel for the purposes of operating or propelling stationary gasoline engines, tractors or motor boats, or who shall purchase in quantities of fifty gallons or more and use any motor fuel for cleaning or dyeing or other use of the same, except as otherwise provided by law, and except in any motor vehicle * required to be registered by the provisions of the Uniform Motor Vehicle Registration Act, or exempt from registration by reason of ownership or residence and except in air-

craft, and who shall have paid any excise tax on such motor fuel hereby required to be paid, whether directly to the vendor from whom it was purchased, or indirectly by adding the amount of such excise tax to the price of such motor fuel, shall be entitled to be reimbursed and repaid the amount of such excise tax so paid by him in the following manner and under the following conditions:

"(a). Claimant shall present to the Commissioner an affidavit supported by the original receipted wholesaler's invoice or invoices showing purchase. Such affidavit shall be verified by the oath of the claimant and shall state the name of the person from whom purchased, date of purchase, the total amount of such motor fuel purchased, that the motor fuel so purchased has been paid for, and that the same has been used by said claimant otherwise than in motor vehicles operated or intended to be operated upon the public highways within the State of Idaho.

"Upon the approval by the commissioner and the State Board of Examiners of such affidavit and supporting invoices, the State Auditor shall draw his warrant upon the State Treasurer for the amount of such claim in favor of such claimant and such claim shall be paid from the 'Motor Fuel Refund Fund': * * *

"(b). * * *

"(c). * * *

"The above conditions having been fully complied with, the commissioner shall determine the amount of refund due to such applicant, and the same shall be paid as herein provided: * * *"

A decision of the question herein presented depends upon the purpose and intent of the legislature in enacting the Motor Fuel Excise Tax Statute. That is to say, whether the legislature intended to levy a general tax for general purposes, or an excise tax in the nature of a privilege tax, to be exacted of all users of motor fuel to propel vehicles upon the highways of the state. In other words, did the legislature intend only to require that all users of motor vehicles on the highways of the state should contribute to their maintenance in proportion to the use?

In *Independent School Dist. v. Pfost*, 51 Ida. 240, 246,

254, 4 P. (2d) 893, the school district sought to enjoin Commissioner of Law Enforcement Pfost "from collecting from it the gasoline tax provided for in Chapter 172 of the 1923 Session Laws (Motor Fuel Excise Statute) and amendatory acts." In passing upon the question as to whether the school district was, or was not, subject to the payment of the tax, this court said:

"The provisions of the act leave no doubts in our minds that the clear policy of the law is simply to require, so far as the legislature can, that all using motor vehicles on the highways of this state shall contribute to their maintenance in the proportion of that use. This enforced contribution is measured by the amount of gasoline consumed in that use. * * *

"In Idaho the legislature was confronted with this condition. It found a demand for better roads incident to the use of rapid motor-driven vehicles. It found an extensive use of gasoline on its highways in this traffic. Without affecting the legality of that use it imposed a tax upon the use and adopted a method of collecting the tax without exacting any license or permit. * * *

"The fundamental justice and policy of the gasoline tax in this state is the requirement that without exemption the burden of maintenance of the highways is placed directly upon those benefited by that maintenance. If exemptions were granted, then this equitable placement of the burden would to that extent be destroyed. To that extent the individuals using the highways as a class would alone pay for a benefit enjoyed by the general public through its agencies."

In *Oregon Short Line R. R. Co. v. Pfost*, 53 Ida. 559, 574, 27 P. (2d) 877, this court, with approval, quoted the above from *Independent School Dist. v Pfost*, supra, and then said:

"In other words, the tax should be exacted from those who actually use the highways by operating motor vehicles thereon, for whose particular benefit the same are constructed and maintained. It is through such actual use of motor vehicles on the highways that they are continuously being worn out and destroyed, requiring large sums of money for the purpose of rebuilding and maintaining

the same. It cannot be said that the railroad actually uses the highway, as it is commonly contemplated. The railroad company is required to construct and equip its own railroad line and maintain it at its own expense."

The next case to which we direct attention is *State v. Boise City*, 57 Ida. 507, 512, 513, 66 P. (2d) 1016. In that case, the City of Boise contended it was not subject to the payment of the motor fuel tax. In passing on the question as to whether it was, or was not, this court quoted with approval the following from *State v. City of Des Moines* (Iowa), 266 N.W. 41, 46:

" 'The motor vehicle fuel tax is not a general tax for general purposes, but an excise tax in the nature of a privilege tax, exacted of all users of motor vehicle fuel to propel vehicles upon the highways of this state, for a specific purpose, that of building and maintaining public highways within the state, * * *' "

Having so quoted with approval, this court then said:

"* * * and while, if roads are to be maintained, funds have to be provided by some form of taxation or imposition, there is a direct relationship between the gasoline tax and the roads, in that the gasoline is consumed in instrumentalities which use the roads, in other words, it partakes of the nature of a tax for the privilege of using the road."

With the proposition settled and completely removed from serious controversy that the motor vehicle fuels tax is not a tax for general purposes, but a privilege tax, a tax enacted from those who use the highways, in proportion to the use, for the construction and maintenance of highways, we come directly to a consideration of the above quoted 1945 amendments. That no change was made or intended by Section 10, supra, in purpose or intent, and that the purpose and intent is, as formerly, to provide for the construction and maintenance of highways, is made clear by the provision "that all moneys received from the one cent per gallon additional tax * * * shall be placed in the State Highway Fund and, held until said funds are available for post-war highway construction, and to be used only for the purpose of matching federal funds for the construction, maintenance, improvement and recon-

struction of highways and farm to market roads in the State of Idaho, as provided for in said act or acts."

That view is also supported by Section 12, supra, which provides that "an amount equal to twenty per cent of the balance of all such sum or sums as may have been collected (from the excise tax) shall be placed in the State Highway Treasury Note Redemption Fund under the provisions of Chapter 3 of the Session Laws of 1929, Extraordinary Session."

If, as will have been observed, no change was made or intended that the cost of construction and maintenance of highways should fall primarily on those who use them, in proportion to the use, did the legislature intend that the one cent per gallon additional tax, though specially directed to be used for highway purposes, should not be refunded to those from whom the tax was collected, but who did not use the highways? And if, as above pointed out, the legislature intended to and did place the burden, as far as it could, of constructing and maintaining highways upon those who use them, thus exempting those who do not, did the legislature, having so exempted nonusers, intend, nevertheless, to deny a refund and thus largely destroy the foundation upon which the Motor Vehicle Fuel Tax Statute is based?

Section 18 (a), it will be noted, provides that a person who has paid the tax and claims a refund shall present an affidavit to the Commissioner, supported by the original wholesaler's invoice, or invoices, showing purchase; that the affidavit shall state the name of the person from whom the motor fuel was purchased, date of purchase, total amount of fuel purchased; "that the motor fuel so purchased has been paid for, and that the same has been used by said person otherwise than in motor vehicles operated or intended to be operated upon the highways within the State of Idaho"; that "upon the approval by the Commissioner and the Board of Examiners of such affidavit and supporting invoices, the State Auditor shall draw his warrant upon the State Treasurer for the amount of such claim in favor of such claimant and such claim shall be paid from the 'Motor Fuel Refund Fund'; * * *" Section 18 (c) provides that "the above conditions having been fully complied with, the Commissioner shall determine the

amount of refund due to such claimant and the same shall be paid as herein provided."

It must be kept in mind Sections 10, 12 and 18 are parts of the Motor Vehicle Fuel Excise Tax Statute. In other words, that those sections are in *pari materia,* hence must be construed together, and further that they were enacted by the same session of the legislature. Is it not clear, then, all that was intended by the last above quoted provision of Section 10 was to direct that the moneys collected from the one cent per gallon additional tax be placed in the State Highway Fund to be used for highway purposes (being the identical purpose which prompted the original enactment of that statute), subject, of course, to the payment of refunds as expressly required by Section 18?

Furthermore, a denial of refunds to all non-highway users would necessarily include appellant and other companies operating railroads in interstate commerce. We cannot attribute to the legislature an intent to deny refunds of the one cent per gallon additional tax to *all* non-highway users, because that would amount to holding the legislature designedly and willfully intended to violate the commerce clause of the Federal Constitution (Constitution U. S., Art. I, Sec. 8, clause 3) by placing a direct burden on interstate commerce which, of course, it could not do. (*Helson v. Kentucky,* 279 U.S. 245, 73 L. ed. 683; *Interstate Transit v. Lindsey,* 283 U.S. 183, 75 L. ed. 953; *Cooney v. Mountain States Teleph. & Teleg. Co.,* 294 U.S. 384, 79 L. ed. 934; *Bingaman v. Golden Eagle Western Lines,* 297 U.S. 626, 80 L. ed. 928.)

Judgment reversed and the cause remanded with directions to the trial court to proceed in accordance with the views above expressed. Costs awarded to appellant.

Ailshie, C. J., and Budge, Givens and Miller, JJ., concur.

### ON PETITION FOR REHEARING
(March 25, 1946)

HOLDEN, J.—■ The sole question presented for decision in this case, on the original hearing, was, as stated in the foregoing opinion, as to whether "one who purchases and uses motor fuel and pays the one cent per gallon tax thereon, for instance, railroads in rail operations, and

farmers in operating farms," for what was termed "nonhighway purposes," were "entitled to a refund of the tax." We held those who purchase and use motor fuel for "nonhighway purposes," for instance, and as pointed out, "railroads in rail operations, and farmers in operating farms" were entitled to a refund. We further held no change in purpose was intended by the enactment of the 1945 amendments (Section 10, Chapter 194, Sess. L. 1945, p. 309; Sections 12 and 18, Chapter 163, Sess. L. 1945, pp. 242, 243). Furthermore, an examination of Section 12, supra, discloses that, as to the distribution of excise taxes collected, no change whatever was either intended or made. Petitioner says we did not "determine whether the proceeds of said tax (excise) should be distributed or allocated as provided by the provisions of Section 12 of the Motor Fuels Law as amended by Chapter 163, Session Laws of 1945, page 242." While that question was not presented for decision, it having been held no change in purpose was intended by the enactment of the 1945 amendments, and it appearing no change whatever, in fact, was made by Section 12, as amended, it follows all excise taxes collected should be placed and distributed as formerly and as provided by Section 12, supra.

The petition is denied.

Ailshie, C. J., and Budge, Givens and Miller, JJ., concur.