CROCKETT, Secretary of State, v. SALT LAKE COUNTY (UTAH OIL REFINING CO. et al., Interveners).

No. 4584. Decided March 28, 1928. (270 P. 142.)
Rehearing Denied Aug. 28, 1928.

338

*Wallace B. Kelly,* Co. Atty., and *H. A. Smith,* Asst. Co. Atty., both of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., for respondent.

*Wm. H. Folland,* City Atty., of Salt Lake City, for intervener Salt Lake City.

*Ball, Musser & Mitchell,* of Salt Lake City, for intervener Utah Oil Refining Co.

GIDEON, J.

By this action the secretary of state seeks to recover from Salt Lake county a tax of 2½ cents per gallon on 60, 168 gallons of motor vehicle fuels, to wit, gasoline, purchased and used by the county between March 30, 1924, and October 10, 1924, together with a penalty for failure to pay such tax.

After the institution of the action Salt Lake City was permitted to intervene and join in the defense, and the Utah Oil Refining Company, a private corporation, was permitted to intervene on the side of plaintiff.

The court found, and this finding is not challenged, that the defendant Salt Lake county purchased motor vehicle fuels (gasoline) from E. P. Wilbur & Co., a corporation, f. o. b. Los Angeles, Cal., and caused the same to be shipped into the state of Utah, and there did use said gasoline within the state of Utah and on the highways and roads of the state between the dates and in the amount above stated. The court also found that all of the motor vehicle fuels so purchased were used exclusively by the county in its motor vehicles within the state, and that none of it was resold; also that the gasoline so purchased was subject to the gasoline excise tax provided for in the state law, and that said county is liable for the payment of said tax on each and every gallon of the said motor vehicle fuels to the plaintiff as secretary of state. Judgment was entered in the lower court in favor of plaintiff for the amount of the tax and the penalty provided for nonpayment.

. Authority to maintain an action by the secretary of state for the nonpayment of a tax upon motor vehicle fuels is granted by chapter 39, Laws Utah 1923. Subdivision (a), section 1, of that act states that the term "motor vehicles" shall include and mean "all vehicles, engines or machines movable or immovable, which are operated or propelled by combustion of gasoline," etc. In subdivision (b), gasoline is enumerated as one of the "motor vehicle fuels." Subdivisions (c) and (d) are:

"(c)   The term 'distributor' is hereby defined as any person, firm or corporation who imports or causes to be imported, motor vehicle fuels, as herein defined, for use, distribution or sale, in quantities other than the original packages in which the same was imported, and after the same reaches the state of Utah; and also any person, firm or corporation who produces, refines, manufactures or compounds such fuel in the state of Utah for use, distribution or sale in this state.

"(d)   The term 'retail dealer' is hereby defined as any person, firm or corporation who purchases from a distributor within the state, any motor vehicle fuels in the original packages in which the same was imported, for use, distribution or sale within the state in quantities other than in the original packages; or who imports into the state, motor vehicle fuels in the original packages for use of such person, firm or corporation."

It is quite apparent that the defendant county falls within the class defined as "retail dealer." The gasoline purchased by the county was in original packages ▮ when so purchased, and was imported into this state for the use of the county, and was so used by it in carrying on the affairs of the county. It is provided by section 4 of said chapter 39:

"There is hereby levied and imposed, an excise tax of two and one-half cents per gallon upon the sale, or use as hereinafter provided, of all motor vehicle fuels sold, or used as hereinafter provided, in this state after the taking effect of this act, excepting, however, such motor vehicle fuels as are or have been brought into this state and sold in original packages as purely interstate commerce sales. If any motor vehicle fuels have been purchased outside of the state and brought into this state in original packages or purchased within the state in original packages from a distributor for the use of the consumer, then such tax shall be imposed upon the use of such fuels."

Section 7 of the act is:

"If any distributor or retail dealer shall fail or refuse to pay any tax when the same becomes due, the same shall be delinquent on the first day of the next succeeding month. If not paid before such date there shall be imposed a penalty of twenty-five per cent of the amount of the tax. The amount of such tax with the penalty shall bear interest at the rate of twelve per cent. per annum from the date of delinquency until the same is paid."

Some suggestion is made in the argument of appellants that the court ruled that Salt Lake County is neither a retail dealer nor a distributor as defined by the gasoline tax law, but also ruled that the county is liable for the tax with interest and penalty. It is true that the court did not find specifically that the county is a distributor or retail dealer, but the court did find that the defendant county purchased the gasoline in the state of California and caused the same to be shipped into this state and used it within the state. That finding fixed the status of the county as a retail dealer as that term is defined in subdivision (d) above quoted.

The tax, by the terms of section 6 of the act, is directed to the sale or use of motor vehicle fuels. It is provided, section 4 above quoted, that, if the fuels have been purchased outside of the state and brought within the state "for the use of the consumer, then such tax shall be imposed upon the use of such fuels." It quite clearly appears from the facts found by the court that the tax sought to be collected by this action is one imposed for the use of the fuels by the county. The power of a state to impose such a tax is not questioned by appellants.

The contention of appellants, as stated in their brief, is:

"(1)    That the gasoline tax law did not impose upon Salt Lake county a tax upon gasoline used by the county in discharging its public works.

"(2)    That, even though the tax law did impose upon Salt Lake county a tax for gasoline used by it, it did not impose any penalty and interest for nonpayment; said penalty and interest being imposed only upon dealers and distributors failing to pay the tax."

It is contended in the brief of appellants:

"The general rule   *   *   *   is that the state and the political subdivisions of the state and municipal corporations which are charged with the administration of law and promoting of public welfare are not burdened with a tax, unless the tax statute expressly so declares. The principal ways in which Salt Lake county uses gasoline are in the construction, maintenance, and repair of the public highways of the county, in the operation of automobiles in connection with policing the

county in the prevention of crime and in inspection and providing for the relief of the poor."

It is also contended on behalf of Salt Lake City that the gasoline purchased by it was used for similar purposes within the state, and in addition in extinguishing and preventing fires and the performance of its public duties.

The right of appellants to be relieved or excused from paying the tax sought to be recovered must be found, if found at all, in an implied exception to the provisions of the statute quoted. There is no express language found in the act, either in the parts quoted or elsewhere, indicating an intention on the part of the Legislature to exempt appellants from the duty of paying the tax therein specified. The contention of appellants, or, rather, the theory upon which the argument is founded that the Legislature did not intend this tax to be applicable to cities and counties is probably as succinctly and clearly stated in *Trustees of Public Schools* v. *City of Trenton,* 30 N. J. Eq. 681, as follows:

"The immunity of the property of the state, and of its political subdivisions from taxation, does not result from a want of power in the legislature to subject such property to taxation. The state may, if it sees fit, subject its property, and the property owned by its municipal divisions, to taxation, in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable, is not applicable to the property of the state or its municipalities. Such property is, therefore, by implication, excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it."

Numerous other cases and authorities are cited in the brief supporting the general rule of construction stated by the New Jersey court. The cases cited by appellants, with probably one or two exceptions, relate to or affect property devoted to a public use. The courts were considering and discussing the power of general taxation and not an excise

tax such as we have in question here. Some of the courts (notably in *Foster* v. *City of Duluth,* 120 Minn, 484, 140 N. W. 129, 48 L. R. A. [N.S.] 707) base their argument on the claim that to permit property used by a municipality for public use to be taxed, and upon failure to pay the tax sell the property, would change the nature from a public use to a private use. In *Foster* v. *City of Duluth,* supra, the court said:

"It is technically inaccurate to say that it [property of the state and its political subdivisions] was *exempt* from taxation, for the term 'exemption' rather presupposes a liability removed by some constitutional or statutory provision. The property is 'exempt,' not because of any such provision declaring it exempt, but because of its character as public property devoted to a public use."

In this case the gasoline used by the county cannot be said to have been impressed to a public use in the sense that other property, either real or personal, may be devoted to a public use.

The theory and the intent of the Legislature in levying the tax, as provided in the act, is:

"For the payment of interest and sinking fund charges on state road bonds until such fund shall contain an amount which, added to any other funds available for the payment of interest and sinking fund charges on state road bonds, will be sufficient to pay all interest and sinking fund charges on state road bonds which shall become due during the calendar year. After such fund has been credited with an amount which, added to any other funds available for the payment of interest and sinking fund charges on state road bonds, will be sufficient to pay such interest and sinking fund charges which shall become due during the calendar year, the state treasurer shall credit all receipts from the said excise tax during the remainder of the calendar year to the credit of the state highway and maintenance fund." Section 6.

It thus appears that the tax is not for the purpose of raising revenue for the payment of the usual and ordinary expenses of state government, but for the construction and maintenance of public highways. These highways are open,

not only for the use of the citizens of the state, but for others traveling within the state and for the counties and cities in the discharge of their public duties. While it is true the municipalities of the state shall be subject to the tax, nevertheless there is no provision or language found in the act which indicates the intent of the Legislature to exempt or relieve counties or cities from paying the tax imposed on all who use motor vehicle fuels for vehicles, engines, or machines, movable or immovable, within the state. On the contrary the admitted purpose of the legislation and the directions contained in the act as to the disposition of the funds so raised not only fail to indicate an intention on the part of the Legislature not to exempt municipalities from payment of the tax, but negative any inference that such municipalities were intended to be relieved from the payment of the tax.

The tax levied is by the statute designated an excise tax; that is, it is a tax for the privilege of selling motor vehicle fuels and likewise for the use of such fuels when purchased outside of the state and brought within the state for use. It is in no sense a general tax upon the property of the municipality, but is a tax charged against the municipality for the privileges included within the terms of the act and which are made subject to the tax. It does not purport to be a tax against any specific property, real or personal.

The second and third headnotes to *Foster & Creighton Co.* v. *Graham*, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971 are:

" 'Direct tax' is one imposed directly on property according to its value, and is generally spoken of as property or ad valorem tax. * * *

" 'Indirect tax' is tax on some right or privilege, and is also called excise or occupation tax."

The third headnote to *City of Portland* v. *Kozer*, 108 Or. 375, 217 P. 833, is:

"The rule that exemption of property from taxation does not include exemption from excise or privilege taxes applies to state property."

In that case the city of Portland sought to enjoin the secretary of state from the collection of a tax imposed by the statutes of Oregon on gasoline used by the city. The court held the tax to be a charge against the dealer and dismissed the action. The court pointed out that undoubtedly the amount of the tax finally falls upon the purchaser, as it would be natural for the seller to add the amount of the tax to the price of the commodity. In the course of the opinion, the court uses this language:

"The language of the later statute is definite as to the persons who are required to pay the tax therein provided. The municipalities are in no way relieved from the burden of paying any addition that may be added to the price of motor fuels which may be occasioned by the tax. There is no indication in the language of either of the statutes in question that it was the intention of the lawmakers to relieve municipalities from the burden of paying any such enhanced price."

The above language is applicable to the provisions of our statute.

The further contention is that, if it be conceded that appellants are liable for the tax, nevertheless the court erred in giving judgment against the county for the penalty and interest as provided in section 7 of the act quoted above. It is argued that the county was neither a distributor nor a retail dealer, and that it is apparent from the other provisions of the act that the penalty is not to be imposed on a user merely, one not engaged in commercially handling motor vehicle fuels. The contention that the appellants are neither retail dealers nor distributors cannot be sustained. Under the clear meaning of subdivision (d) of section 1, c. 39, the county falls within the designation of "retail dealer." Section 7, which provides for the penalty, makes no exception in favor of a user in the imposition of the penalty against any distributor or retail dealer who does not pay the tax when due. It also provides

that the amount of the tax with the penalty shall draw interest at the rate of 12 per cent per annum. Under the plain intent of that section, there seems to be no escape from the conclusion that the court rightly included within its judgment the penalty and interest as therein provided.

We find no error in the record. Judgment affirmed, with costs.

THURMAN, C. J., and CHERRY, J., concur.

HANSEN, J. I dissent. In this proceeding appellant concedes that the state Legislature has the right to impose an excise tax upon motor vehicle fuels imported into the state by a county for its own use. The question to be determined upon this appeal is whether or not Laws Utah 1923, c. 39, and Laws Utah 1925, c. 40, in fact impose an excise tax upon motor vehicle fuels imported into the state by the county and used by it in carrying on its governmental functions. Laws providing for taxation and exemptions from taxation are, as a general rule, to be construed, where possible, so as to make the burden or liability uniform. Sutherland, Stat. Const. §§ 362 and 364. The reasons for the rule, however, do not apply when considering municipal corporations in contrast with other corporations. Municipal corporations, such as counties, are created to spend money, whereas ordinary private corporations are usually created for profit. Under the laws of this state, counties secure practically all of their revenues from taxation in much the same manner as the state secures its revenues. If counties are compelled to pay to the state any tax, the counties in turn must secure the revenue from a source of taxation which is equally open to the state. For this reason it is quite generally held that the property of a state and its political subdivisions are immune from taxation unless there is a clear legislative intent showing the contrary. The following authorities cited by counsel for appellant support this view: *Trustees of*

*Public Schools* v. *Trenton,* 30 N. J. Eq. 681; 1 Cooley on Taxation (3. Ed.) p. 263; *Attorney General v. Morris,* 2 M. & W. 159; *Mersy Docks* v. *Cameron,* 11 H. of L. Cas. 443; *Inhabitants, etc.,* v. *County Commissioners,* 4 Gray (Mass.) 500; *Worcester County* v. *Worcester,* 116 Mass. 193, 17 Am. Rep. 159; *State* v. *Gaffney,* 34 N. J. Law, 131; 26 R. C. L. 331; *Notes to Board of Commissioners* v. *Ottawa,* 33 Am. St. Rep. 400, 405; *Foster* v. *Duluth,* 120 Minn. 484, 140 N. W. 129, 48 L. R. A. (N. S.) 707; *Penick* v. *Foster,* 129 Ga. 217, 58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346; *Drall* v. *Furnas County,* 108 Neb. 85, 187 N. W. 876, 26 A. L. R. 543; *National Surety Co.* v. *Starkey,* 41 S. D. 356, 170 N. W. 582; *Henson* v. *Monday,* 143 Tenn. 418, 224 S. W. 1043; *Re Estate of Andrew Macky,* 46 Colo. 79, 102 P. 1075, 23 L. R. A. (N. S.) 1217; *Dispensary Comm'rs of Terrill County* v. *Thornton,* 106 Ga. 106, 31 S. E. 733; *Balthasar* v. *Pacific Elec. Ry. Co.,* 187 Cal. 302, 202 P. 37, 19 A. L. R. 452; *Marin Municipal Water Dist.* v. *Chenu,* 188 Cal. 734, 207 P. 251. The policy of this state as expressed in our state Constitution, art. 13, § 3, has been and still is that property belonging to a county may not be taxed. Counsel for all the parties to this proceeding concede that there is a distinction between a property tax and an excise tax, and of course if this were not so the Legislature is clearly without power to levy an excise tax on gasoline used by the county. The fundamental reasons, however, justifying exemption of property belonging to counties from taxation are applicable to exempt counties from the payment of an excise tax upon gasoline used by counties in performing their governmental functions. The reason for the rule exempting property belonging to municipal corporations from taxation is stated in 2 Cooley on Taxation (4th Ed.) § 621, p. 1312, in the following language:

"Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and

which is held by them for public purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the Legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the Constitution or a statute."

Counties are created by our state Constitution, and perform a very important part of our system of state government. To properly perform their functions in this age of rapid transportation, the counties have as urgent a need for the use of motor vehicle fuels as for any of their property. If counties are required to pay an excise tax to the state upon gasoline consumed, such tax must be paid from funds derived from the same source as would the money for the payment of a property tax. In construing the law involved in this proceeding, the presumption should be indulged at the outset that counties are not intended to be required to pay an excise tax on gasoline imported and used by them in the performance of governmental functions. The presumption, however, may not offend against the express provisions of the law.

Comp. Laws Utah 1917, § 1360, defines counties as "bodies corporate and politic." Comp. Laws Utah 1917, § 5848 provides:

"In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the Legislature or repugnant to the context of the statute:

\* \* \* \* \* \* \* \* \* \*

"5. The word 'person' includes bodies politic and corporate, partnerships, associations, and companies."

The word "corporation," as well as the word "person," may or may not embrace a municipal corporation, depending upon the legislative intent as indicated by a consideration of the particular law in which the word is used. 1 McQuillin, Municipal Corporations, § 108, pp. 264, 265, and cases cited in the footnote.

The plaintiff claims authority to collect an excise tax from the defendant Salt Lake county by reason of the provisions of Laws Utah 1923, c. 39, and the amendments thereto contained in Laws Utah 1925, c. 40. Subdivisions (c) and (d) of section 1, c. 39, Laws Utah 1923, are:

"(c) The term 'distributor' is hereby defined as any person, firm or corporation who imports or causes to be imported, motor vehicle fuels, as herein defined, for use, distribution or sale, in quantities other than the original packages in which the same was imported, and after the same reaches the state of Utah; and also any person, firm or corporation who produces, refines, manufactures or compounds such fuel in the state of Utah for use, distribution or sale in this state.

"(d) The term 'retail dealer' is hereby defined as any person, firm or corporation who purchases from a distributor within the state, any motor vehicle fuels in the original packages in which the same was imported, for use, distribution or sale within the state in quantities other than in the original packages; or who imports into the state, motor vehicle fuels in the original packages for use of such person, firm or corporation."

### In section 2, it is provided:

"Every retail dealer in motor vehicle fuel shall pay a license tax of one dollar for each place of business or agency for a period of three months or fraction thereof."

### In section 3, it is provided:

"After this act takes effect it shall be unlawful for any person to distribute, sell or use motor vehicle fuels, the sale or use of which is taxable under this act, without having paid the said license tax and without having at all times conspicuously displayed at his place of business or agency a license certificate evidencing the payment of such license tax for the then quarter year or fraction thereof."

None of the law above quoted is materially amended by Laws Utah 1925, c. 40.

It will be observed that, if Salt Lake county comes under the provisions of the law as it was in both Laws Utah 1923 and Laws Utah 1925, such county was required to take out a license before it could lawfully use its own gasoline imported by it from the state of California. "To license means to confer on a person the right to do something which otherwise he would not have the right to do." 17 R. C. L. § 2, p. 474, and cases cited in the footnote. The County Commissioners of the defendant Salt Lake county are granted power "to manage and dispose of its [the county's] property as the interests of its inhabitants may require." Comp. Laws Utah 1917, § 1363. It is obvious that, when Salt Lake county acquired title to the gasoline shipped from California, the interest of the inhabitants of Salt Lake county required that such gasoline be used, because otherwise it served no useful purpose. If the law in question was intended to apply to counties, it would be, to say the least, a very unusual requirement that such counties as used gasoline shipped to them from other states must take out a license to use the property or to display a license certificate evidencing the payment of the license tax. Yet the law provides that it shall be unlawful to use motor vehicle fuels without complying with such provisions. Laws Utah 1923, c. 39, § 5, requires that distributors and retail dealers shall render to the secretary of state monthly sworn statements of the number of gallons of motor vehicle fuels sold during the preceding month. By amendment in Laws Utah 1925, c. 40, § 5, the sworn monthly statement must contain not only the motor vehicle fuels sold but also motor vehicle fuels used. Section 6 of both the 1923 and 1925 acts provides that distributors and retail dealers shall, on or before the 15th day of each month, pay to the secretary of state the excise tax on all sales made during the preceding month. Neither the law of 1923 nor that of 1925 fixes any definite date when the tax shall be paid by a user who brings motor

vehicle fuels into the state for use and not for sale as was done by the defendant county. Provision is made by law of the definite and specific duties of each county officer, but nowhere in either the law of 1923 or that of 1925 is any mention made of the person whose duty it is to make the monthly statements provided for in the acts. The money of counties may not be disposed of except as provided by law. Comp. Laws Utah 1917, § 1427, provides for the form of claims against a county, and directs that the county commissioners shall not hear or consider any claim unless the same is as provided by law. Both the law of 1923 and the law of 1925 are silent as to the manner in which the excise tax levied against the county can lawfully be paid. The act of 1923 (section 7) provides:

"If any distributor or retail dealer shall fail or refuse to pay any tax when the same becomes due, the same shall be delinquent on the first day of the next succeeding month. If not paid before such date there shall be imposed a penalty of twenty-five per cent of the amount of the tax. The amount of such tax with the penalty shall bear interest at the rate of twelve per cent per annum from the date of delinquency until the same is paid."

This section was not amended by Laws Utah 1925. It should be kept in mind that a county within this state is a creature of our state Constitution the same as the Legislature itself. While it is not argued, but seemingly conceded by appellant, that the Legislature has the power to impose a penalty upon a county I entertain very grave doubt that the Legislature is so empowered. The Legislature may of course provide for penalizing a county officer for a failure to perform a duty imposed upon him by law. An entirely different situation is presented, however, if the Legislature should attempt to penalize a county to the advantage of the state because an officer of that county fails to perform a duty imposed upon him by law. The power to penalize is based upon the power to destroy, and clearly the Legislature may not destroy a county. It is, however, not necessary, nor even advisable, to decide this question here. Suf-

fice it to say that it is improbable that the Legislature should intentionally attempt to impose a penalty upon a county to the advantage of the state without any definite provision authorizing or directing any county officer how he may lawfully proceed to avoid the payment of such·penalty.

Section 13 of the 1923 act provides:

"Any distributor, retail dealer, associations of persons, firm or corporation violating any of the provisions of this act, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $1,000.00, or by imprisonment in the county jail of not more than six months, or by both such fine and imprisonment."

This section was not amended by the act of 1925. It will be observed that, if the defendant county is included within the provisions of the act it is guilty of a misdemeanor if it fails to comply with the provisions of the act. It would be interesting to know just how Salt Lake county is to be prosecuted for committing a misdemeanor. I am unable to conceive that the Legislature intended to make a criminal out of one of the arms of the state government if perchance some officer of the county failed to have the county take out a license to use its own property or otherwise failed to comply with the provisions of the act. If the Legislature did not so intend to make counties failing to comply with the act guilty of the crime of a misdeameanor, the only permissible alternative is that the Legislature did not intend . to have the act apply to the defendant Salt Lake county. I am therefore of the opinion that a construction of the act of 1923, as well as that of 1925, which would include counties within the act, is inconsistent with the context of both acts.

Counsel for the intervener Utah Oil Refining Company contend that, if the act of 1923 as amended in 1925 does not include the defendant Salt Lake county, then the act is unconstitutional. The Utah Oil Refining Company is, and for a number of years has been a domestic corporation of

Utah, and extensively engaged in importing, refining, and selling motor vehicle fuels in this state. It is argued that, if Salt Lake county may import gasoline into the state and use the same without the payment of an excise tax, then the Utah Oil Refining Company cannot compete with the foreign dealer, because, if the Utah Oil Refining Company sells gasoline to the defendant county, the tax must be paid, which results in a discrimination against the intervener Utah Oil Refining Company. The act of 1923, as amended in 1925, has been so amended in 1927 (Laws 1927, c. 41) that the contentions made have no application to the present law. This court is unable to grant the Utah Oil Refining Company any relief. Nor does it ask any relief because it did not sell motor vehicle fuels to the defendant county because of the act of 1923 and the amendments thereto in 1925. Nowhere is it made to appear that a determination of the question raised as to the constitutionality of the act of 1923 or the amendments thereto in 1925 can in the slightest degree affect any rights of the parties here, even though it be held that defendant county is not liable for the payment of the tax involved in this proceeding. It is neither profitable nor proper for courts to pass upon whether or not a law, admittedly dead by an act of the Legislature, was or was not constitutional during the time it purported to be a law, where, as here, no rights will be affected by such a determination.

I am of the opinion that the judgment should be reversed and the appellant awarded costs.

STRAUP, J. (dissenting). I fully concur with the dissenting views of Mr. Justice HANSEN. With respect to the conclusion reached and the construction given the act in the prevailing opinion, I think these further observations pertinent: By the act no one but a "distributor" or a "retail dealer," as defined by subdivisions (c) and (d) of section 1 of the act, is subject to the tax or penalties or requirements as in the act provided. In other words, all those who are intended to be subject to the tax and the

requirements of the act are divided into two classes, a "distributor" and a "retail dealer." In an attempt to indicate those intended to be included in the one and in the other class, unreal and factitious meanings are given the well understood, common, and popular meaning of the terms, "distributor" and "retail dealer"; and what is rendered unintelligible by the fanciful definition of the one is rendered uncertain and ambiguous by the capricious definition of the other. Looking at the situation as best we may to ascertain the legislative intent, the most favorable view of the definitions is that all persons, firms, and corporations are subject to the tax and to the requirements of the act, (1) who produce, manufacture, or compound motor vehicle fuel for use, distribution, or sale in the state; (2) who import the fuel for use, distribution, or sale in quantities other than in original packages; (3) who purchase it in the state in original packages from a distributor, for use, distribution, or sale in the state in quantities other than in the original package; (4) who import it into the state in an original package for his or its own use. It thus is seen that no one is made subject to the tax for his own use of the fuel, except one who imports it in an original package for his own use. Under the act, one may import the fuel in original packages for sale, distribution, or for the use of others, without being subject to the tax; but, if one so imports it for his own use, he is subject to the tax. I see no legal basis for the distinction. The distinction may have been made to avoid what might have been thought an infringement on the commerce clause of the Federal Constitution, and on the belief that, if one, importing the fuel in original packages for sale, distribution, or, not for his own use, but for the use of others, should be made subject to the tax, the commerce clause would be transgressed, and hence all such were excluded; but the Legislature may have thought no such infringement resulted by including one who, in such case, imported the fuel for his own use. If fuel ordered or purchased before importation and before

it lost its character as commerce and sold in trade is not subject to the special or excise tax, I do not well see how it may be made subject to such tax when so imported for one's own use, unless the tax is laid on the use of the fuel by all who use or consume it regardless of whether the fuel was imported or otherwise obtained in original packages or otherwise. But that is not what this act does. In such respect it lays a tax only on the consumer or user when he imports it in original packages for his own use, and, too, regardless of whether the purchase was made or order given before or after importation and regardless of whether the fuel had or had not lost its character of commerce. In such respect I think the act different from the act of New Mexico (Laws N. M. 1919, c. 93), considered by the Supreme Court of the United States in the case of *Askren* v. *Continental Oil Co.*, 252 U. S. 444, 40 S. Ct. 355, 64 L. Ed. 654, and it further is perceived that the facts and conditions of this and of that case are quite dissimilar, and that whatever was said by the court in the Askren Case must be considered with respect to the particular facts and conditions and of the kind of statute there under consideration. The dominant thought of the act here in effect is to lay a tax on the producer, distributor, and dealer of and in the fuel (that is, on the fuel produced or distributed by a producer or distributor or dealt with by a dealer, and not on the consumer or user, except as may be inferred when he imports the fuel in original packages for his own use); and if it be held, as it is in the prevailing opinion, that the county is included within such exception, then it seems to me the act, if not bad because transgressing the federal commerce clause, is bad because of an unreasonable discrimination. I, however, prefer to regard the act, as does Mr. Justice HANSEN, as not intending to include a situation or condition as here presented and for the reasons stated by him and thus uphold the act. But, if it is to be given the construction given it in the prevailing opinion, then I think it bad in the particular and for the reasons stated.