### CITY OF ARDMORE v. STATE ex rel. OKLAHOMA TAX COMMISSION.

No. 24029. April 10, 1934.

Rehearing Denied May 1, 1934.

Application to File Second Petition for Rehearing Denied May 22, 1934.

Williams & Williams and J. E. Williams, for plaintiff in error.

C. W. King, Claud Hendon, L. G. Harries, A. L. Herr, J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendant in error.

J. H. Hill, John R. Ramsey, B. W. Griffith, Sol H. Kaufman, J. W. Finley, Warren T. Spies, Hayes McCoy, Harlan T. Deupree, A. P. Van Meter, and Forrester Brewster, amici curiae.

OSBORN, J. This action was brought by the State of Oklahoma ex rel. Oklahoma Tax Commission against the city of Ardmore in the district court of Carter county, wherein, under the provisions of section 12527, O. S. 1931, the state sought to recover an amount alleged to be due by reason of the failure of the city of Ardmore to pay the gasoline tax on a carload of gasoline purchased by the city and delivered to it through interstate commerce, which had been used by the city in the operation of its fire, police, and other municipal departments. The trial court found that the city was liable for the payment of said tax, and from the judgment of the trial court, the city has appealed. The parties will be referred to as they appeared in the trial court.

The contention of the defendant is that the statutes which purport to levy an excise tax on gasoline against municipalities contravene the provisions of section 6, art. 10 of the Constitution, which provides that all property of municipalities of this state shall be exempt from taxation.

The principal issue before the court is whether or not the Legislature has levied an excise tax on gasoline consumed by municipal corporations in this state, and if so, does said act or acts contravene the provisions of the Constitution? These two issues are so allied that we shall discuss them together.

In construing a statute the general rule is that the intent of the Legislature, when ascertained, must govern. McCarter v. State ex rel. Pitman, 82 Okla. 78, 198 P. 303. In ascertaining such intention the court may look to each part of the statute, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. Blevins v. W. A. Graham Co., 72 Okla. 308, 182 P. 247. Not only must the whole statute and every part of it be considered, but where there are several statutes in pari materia, they are all, whether referred to or not, to be taken together and one part construed with another in the construction of any material provision. DeGraffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 P. 624. If the language used by the Legislature conveys a definite meaning which involves no absurdity, nor any contradiction of any other parts of the statute, then that meaning apparent on the face of

the statute must be accepted. Falter v. Walker, 47 Okla. 527, 149 P. 1111. Subsequent legislative enactments may be resorted to as an aid in the interpretation of prior legislation upon the same subject. State ex rel. Freeling, Atty. Gen., v. Howard, 67 Okla. 296, 171 P. 41.

Bearing in mind the above principles of statutory interpretation, let us turn to the statute under consideration, and to kindred statutes dealing with the same general subject, and analyze their various provisions.

Section 12527, O. S. 1931 (sec. 1, ch. 278, S. L. 1929), provides, in part:

"There is hereby levied an excise tax of four cents (4c) per gallon on each and every gallon of gasoline consumed in the state of Oklahoma, to be reported and collected as hereinafter provided. * * *"

The above statute amended section 1, ch. 198, S. L. 1925, which was an amendment of section 1, ch. 101, S. L. 1923-24, which amended section 1, ch. 239, S. L. 1923. The 1923 Act provided:

"Sec. 1. There is hereby levied an excise tax of one (1) cent per gallon on each and every gallon of gasoline consumed in the state of Oklahoma, to be reported and collected as hereinafter provided.

"Sec. 2. The term 'gasoline,' for the purposes of this act, shall include gasoline, benzol, liberty fuel, and such other volatile and inflammable petroleum products having a Baume gravity above 50 degrees at a temperature of 60 degrees Fahrenheit; and the term 'consignee' shall mean the person, firm or corporation immediately receiving gasoline subject to inspection as now required by law.

"Sec. 3. It shall be the duty of the oil inspectors and their deputies to include in their reports to the State Oil Inspector the name and address of the consignee of the gasoline inspected, the date of inspection, the number of gallons inspected, and the amount of tax thereon herein provided for; and to transmit to the State Auditor, concurrently, a duplicate copy of said report. And it shall be the duty of the consignee of all gasoline so inspected on or before the 15th day of each month to make and file with the State Auditor a report under oath showing the number of gallons of gasoline inspected for and received by him during the preceding calendar month, and to pay to the State Auditor the tax thereon herein provided for.

"Sec. 4. It shall be the duty of any manufacturer or producer of gasoline, who consumes the gasoline so manufactured or produced by him, without the same being inspected, at the same time and in the same manner as required by the consignee of gasoline that has been inspected, to report the amount of such gasoline so consumed, and pay the taxes thereon herein provided for."

It is made certain by the above-quoted provisions that the Legislature intended that the "consignee" should pay a tax on all gasoline subject to inspection "as now required by law." By reference to section 11588, O. S. 1931 (sec. 1, ch. 96, S. L. 1915), we learn what gasoline was and is subject to inspection:

"All oil and liquid products of petroleum known as burning oil, or kerosene, and gasoline, by whatever name called, which may or can be used for illuminating, heating or power purposes, manufactured in this state or brought into it, shall be inspected by an authorized inspector of this state before the same are consumed, used or sold or offered to be sold, or disposed of to merchants, consumers, or other persons within the state."

Section 2 of the 1923 Act, supra, was amended by the 1929 Act, appearing as section 12528, O. S. 1931, the pertinent provisions thereof being:

"* * * And the term 'consignee' or 'wholesale distributor' shall mean the person, firm or corporation immediately receiving gasoline subject to inspection as now required by law, and manufacturers and producers who sell or deliver gasoline in quantities less than carload lots."

The legislative intent has been clearly manifested, therefore, to levy an excise tax on all gasoline "subject to inspection as now required by law" and "all oil and liquid products, * * * shall be inspected * * * before the same are consumed, used or sold. * * *"

Section 35, O. S. 1931, adopted in 1890, provides:

"The word 'persons,' except when used by way of contrast, includes not only human beings, but bodies politic or corporate."

The Legislature intended that all gasoline used or consumed in this state should be inspected and upon all inspected gasoline the Legislature levied a tax. The sole specific exemption is provided by section 12545, O. S. 1931 (ch. 280, S. L. 1929), relating to gasoline used for operating farm tractors or stationary engines.

In 1931 the Legislature enacted chapter 66, art. 9, S. L. 1931, providing means and methods of enforcing the collection of the taxes theretofore levied. Section 2 provides in part as follows:

" 'Person' shall mean and include persons, firms, partnerships, companies, corporations, associations, receivers, common-law trusts, statutory trusts and other concerns, by whatever name known or howsoever organized, formed or created, including cities, towns, counties, townships, and other political subdivisions of the state."

Subdivision h of section 25 of said act provides as follows:

"In case any city, town, county, township, or other political subdivision of the state shall fail or refuse to pay the excise tax, or any part thereof, on motor fuel subject to tax, when due, the Oklahoma Tax Commission shall issue a tax warrant for the amount of excise tax due, just as in the case of the delinquency of any other delinquent taxpayer who fails or refuses to pay the excise tax on gasoline or motor fuel; and the sheriff shall serve such warrant on the county treasurer, and, from the date of such service, the same shall be a lien on all ad valorem tax penalties collected by said treasurer for and on account of any such city, town, county, township or other political subdivision of the state, until the amount of all delinquent excise tax, due by any such party, is paid; and the county treasurer is hereby directed and required to remit the amount of all such ad valorem tax penalties, when collected by him, to the Oklahoma Tax Commission, until the amount due the state of Oklahoma, by any such city, town, county, township, or other political subdivision of the state, on delinquent motor fuel excise tax is paid."

We think it clear from the above quoted and cited statutory enactments, that the Legislature intended to levy an excise tax on each and every gallon of gasoline consumed within this state, including that consumed by municipal corporations, unless by other provisions of the Constitution or laws, such municipalities are excepted from the unambiguous provisions of the act levying the tax. If the legislative intent has been manifested, that intent should govern, unless it is in contravention of some express provision of the Constitution.

Turning to the Constitution, we quote section 6, art. 10, as follows:

"All property used for free public libraries, free museums, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States, and of this state, and of counties and of municipalities of this state; household goods of the heads of families, tools, implements, and live stock employed in the support of the family, not exceeding $100 in value, and all growing crops, shall be exempt from taxation: Provided, that all property not herein specified now exempt from taxation under the laws of the territory of Oklahoma, shall be exempt from taxation until otherwise provided by law."

Section 12, art. 10, of the Constitution provides:

"The Legislature shall have power to provide for the levy and collection of licenses, franchise, gross revenue, excise, income, collateral and direct inheritance, legacy, and succession taxes; also graduated income taxes, graduated collateral and direct inheritance taxes, graduated legacy and succession taxes, also, stamp, registration, production or other specific taxes."

In the case of Monamotor Oil Co. v. Johnson, 3 Fed. Supp. 189 (affirmed by U. S. Supreme Court, opinion filed April 2, 1934, 78 L. Ed. ___, 54 S. Ct. 575), the court, having reference to the gasoline consumption tax of the state of Iowa, said:

"The tax is imposed against the gasoline used or consumed on the highways of the state (State v. Northern Iowa Oil Co., 209 Iowa, 980, 229 N. W. 214); but the liability for its payment is placed upon the persons using or consuming the fuel, and hence it is an excise rather than a direct tax. (Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139.)"

It is asserted, however, that, inasmuch as the act levying the tax does not specifically name municipalities as subject thereto, it will be presumed, by virtue of the provisions of section 6, art. 10, of the Constitution, supra, that municipalities are excepted from the payment of such tax, unless specifically named therein. In support of such contention, Cooley on Taxation (4th Ed.) sec. 621, and 61 C. J. 359, and 12 Am. & Eng. Encyc. of Law (2d Ed.) p. 368, are cited.

Answering this same contention, the Supreme Court of Idaho, in the case of Independent School District v. Pfost, 51 Idaho, 240, 4 P. (2d) 893, said:

"May the state on behalf of its highway department demand an excise tax on gasoline consumed in another department in carrying on its functions?

"A property tax cannot be levied in Idaho against the property of the United States, the state, counties, towns, cities and other municipal corporations, because such property is exempted by sec. 4, art. 7 of the state Constitution. This exemption of property from taxation, where not expressed in the Constitution or legislative act, will generally be assumed, in the absence of the expression of a clear intent not to exempt it. The reason for the exemption, express or presumed, is stated by

Cooley on Taxation (4th Ed.) vol. 2, sec. 621, as follows: 'Some things are always presumptively exempted from the operation of general tax laws because it is reasonable to suppose they were not within the intent of the Legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for public purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the Legislature would ever purposely lay such a burden upon public property, and therefore it is a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the Constitution or a statute.'

"However, this rule applies only to property taxation, and does not apply to excise or privilege taxes. City of Portland v. Kozer, 108 Or. 375, 217 P. 833; Crockett v. Salt Lake County, 72 Utah, 337, 270 P. 142, 60 A. L. R. 667.

"The reasoning for the presumption of exemption fails when applied to a tax like that under consideration because the agencies involved are not both supported by property taxation. Where two agencies of the state are supported by like property taxes, taxing the property of one in behalf of the other ultimately draws the entire revenue from the privately owned property taxed for the support of both, and is an idle act, but manifestly such is not the case when one agency is wholly or mainly supported by property taxes and the other wholly or mainly by excise taxes.

"The fundamental justice and policy of the gasoline tax in this state is the requirement that without exemption the burden of maintenance of the highways is placed directly upon those benefited by that maintenance. If exemptions were granted, then this equitable placement of the burden would to that extent be destroyed. To that extent the individuals using the highways as a class would alone pay for a benefit enjoyed by the general public through its agencies."

In the case of City of Louisville v. Cromwell, Treasurer, 233 Ky. 828, 27 S. W. (2d) 377, the court held as follows:

"Since Const. sec. 170, exempting public property used for public purposes from taxation, refers only to ad valorem taxes, and has no application to license, franchise, occupation, or excise taxes authorized to be levied and collected under section 181, city was not exempt from payment of tax imposed on gasoline pursuant to provisions of Acts 1928, c. 127, sec. 1 (Ky. St. sec. 4224-b-1), in view of provision of Const. sec. 3, to effect that no property shall be exempt from taxation except as provided therein."

At page 379, of 27 S. W. (2d), the court said:

"In section 276, p. 315, 26 R. C. L., the learned compilers state the general rule with reference to the application of exemption provisions relieving from taxation thus: 'An exemption from taxation applies primarily to the annual general property (ad valorem) tax, whether it is to be extended to other classes of taxes depends upon various circumstances. Thus it does not ordinarily apply to excises, especially to such as are not in lieu of property taxes, but are imposed upon the enjoyment of a privilege.' See, also, the text to the same effect in Cooley on Taxation, supra, vol. 4, sec. 1671, p. 3377, same volume, section 1681, p. 3388, and same volume, section 1695, pp. 3406 and 3407, and in the same volume sections 1712, 1719, 1726, 1951. The text in section 1671, p. 3377, referred to, says, inter alia: 'Property and excise taxes are governed to a considerable extent by different rules. Many of the constitutional provisions aply only to property taxes, including such provisions as those requiring equality and uniformity of taxation,' etc. And the text in section 1681, p. 3389, says: 'Provisions in state Constitutions relating to taxes are generally held applicable only to property taxes.' In the section 1719, referred to, the text says: 'Inheritance taxes are governed by rules having little or no application to property taxes, and are sui generis'; and section 1712, p. 3428, of the same volume, says: 'Exemption from taxation of all property of municipal corporations does not exempt a city from a license tax.' In section 1751, p. 3485, it is distinctly pointed out that constitutional provisions and limitations applicable to property taxes are not applicable to an income tax, unless it should appear that the latter tax is placed in the same category of a property tax. The other references to the latest work of the learned author recognized the clear distinction between ad valorem and other classes of taxation and that an exemption from payment of the former class of taxes does not extend to and include either of the latter classes."

In the case of City of Portland v. Kozer, 108 Ore. 375, 217 P. 833, the court said:

"Exemption from property tax does not

**320**

include exemption from excise tax. 1 Cooley on Taxation (3d Ed.) p. 357. The rule that property of the state is exempt from taxation does not apply to privilege taxes. Matter of Merriam, 141 N. Y. 479, 484, 36 N. E. 505; United States v. Perkins, 163 U. S. 625, 16 S. Ct. 1073, 41 L. Ed. 287, 288, 289; 37 Cyc. 1574."

In the case of State v. City of Sioux Falls (S. D.) 244 N. W. 365, it is said:

"Defendant, city of Sioux Falls, a municipal corporation in this state, during the period July 1, 1927, to December 31, 1928, purchased 31,744 gallons of gasoline. This gasoline was ordered by defendant from refineries outside the state of South Dakota, shipped from said refineries in tank cars, received by defendant city in the same original packages in which it entered this state, unloaded by defendant city into its own storage tanks, and used by defendant city through its different departments; a portion being used by the park board in its motor vehicles, a portion by the electric light department of said city in motor vehicles operated by that department, for operation of pumps and for operation of a ditching machine used by the city for excavating for water and sewer pipe. No motor vehicle operated by this gasoline was used for other than municipal purposes or was operated outside the corporate limits of said city. Defendant city did not pay upon this gasoline the tax of 4 cents per gallon imposed upon motor-vehicle fuel by chapter 168, Laws 1927, as amended by chapter 19, Laws Special Session, 1927. Due claim and demand for said tax, together with penalty and interest thereon, being made and refused, the present action was instituted for the collection thereof. * * *

"Appellant also urges that any construction of the statute which would hold appellant for payment of the tax would render the statute obnoxious to that portion of section 5, art. 11, Constitution of South Dakota, which provides that 'the property of * * * municipal corporations, both real and personal, shall be exempt from taxation.' On this point it is sufficient to say that the tax in question does not purport to be, and is not in any sense, a tax upon property (Opinion of the Judges, 50 S. D. 324, 210 N. W. 186), and the constitutional provision here urged by its express terms has application only to the taxation of property, real or personal. Re McKennan's Estate, 25 S. D. 369, 126 N. W. 611, 33 L. R. A. (N. S.) 606, approved on this point but reversed on other grounds, 27 S. D. 136, 130 N. W. 33, 33 L. R. A. (N. S.) 620, Ann. Cas. 1913D, 745. * * *

"It is to be observed that under this statute, however, that 'dealer' specifically includes any person, firm, association, or corporation who receives from any source motor-vehicle fuel in original containers and unloads the same for purposes of storing, selling, delivering, or using. The necessity for this broad definition of the term 'dealer' is entirely apparent. If the customary connotation of the word was not so enlarged for the purpose of this statute, every user of motor vehicles upon our highways whose requirements were large enough to render such a device profitable would purchase his gasoline outside the state, have it come to the state in original packages, and, using it himself and not reselling it, would avoid the tax entirely. In other words, the only person who would pay the tax contemplated by the statute for operating motor vehicles upon our highways would be the small operator whose operations were so limited that he could not profitably buy his motor-vehicle fuel in original packages outside the state. It was to prevent exactly the sort of practice engaged in by appellant city that the word 'dealer' in the statute was defined as comprehensively as it is. Appellant urges that the word 'corporation' which appears as a part of the definition of 'dealer' is not usually understood or interpreted to include public or municipal corporations, and therefore that appellant is not within the statutory definition of 'dealer.' We think we need not here concern ourselves with that question as a broad or general proposition. Looking at the statute as a whole, we fail to discern any legislative intention to exempt from payment of the tax in question any user of motor vehicles upon the public highways of this state, be such user a person, firm, private corporation, public corporation, municipality, or even a governmental subdivision or department of the state itself. For the most part, motor-vehicle fuel used upon the highways of this state is purchased from dealers in this state. By the plain provisions of section 3, of the act as amended, it is contemplated that every gasoline dealer in this state (using the word here in the usual sense of one who sells gasoline) shall pay the tax upon his gasoline when he gets it and recoup himself from the purchaser when he sells it. There is no word in the statute excusing any one purchasing gasoline from a dealer in this state from paying to the dealer at the time of such purchase the tax which the dealer has paid, or for which the dealer has become liable. To put it concretely, if appellant city drove one of its trucks up to the Standard Oil stations in Sioux Falls and bought ten gallons of gasoline upon which the Standard Oil Company as dealer had paid or becomes liable for tax, most assuredly appellant city would have to pay that tax to the Standard Oil Company. To give to the word 'corporation' employed in the definition of 'dealer' in the present statute the interpretation desired by appellant city would mean in actual operation simply this. That municipal corporations

in this state which purchase their motor-vehicle fuel from dealers in this state would have to pay the tax thereon with such refund as they might show themselves entitled to. While, on the other hand, municipal corporations, whose motor-vehicle fuel requirements were large enough to justify the practice, could buy their motor-vehicle fuel in original packages outside the state, bring it here, unload it and use it, and pay no tax whatever, whether it was used for highway or nonhighway purposes. Considering the whole statute, we are compelled to the conclusion that appellant city falls within the statutory definition of the term 'dealer' and is liable for tax payment as a dealer, and we are unable to find that any exemption accrues to the appellant city merely because of the fact that it is a municipal corporation. Generally on the point, and in support of the conclusion at which we have arrived, see City of Portland v. Kozer (1923) 108 Ore. 375, 217 P. 833; Crockett v. Salt Lake County (1928) 72 Utah, 337, 270 P. 142, 60 A. L. R. 867; People v. City and County of Denver (1928) 84 Colo. 576, 272 P. 629; City of Louisville v. Cromwell (1930) 233 Ky. 828, 27 S. W. (2d) 377; Orange State Oil Co. v. Amos (1930) 100 Fla. 884, 130 So. 707; City of West Palm Beach v. Amos, (1930) 100 Fla. 891, 130 So. 710; People v. Deep Rock Oil Corp. (1931) 343 Ill. 388, 175 N. E. 572. A contrary view is indicated in O'Berry v. Mecklinburg County (1930) 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304. In this connection it is interesting to note a subsequent legislative change in North Carolina (sec. 24, ch. 145, Public Laws N. C. 1931) whereby, in substance, every 'municipality, county, or other political subdivision or agency' is specifically made subject to the act."

In the case of Crockett v. Salt Lake County (Utah) 270 P. 142, 60 A. L. R. 867, it is said:

"That gasoline purchased by a city or county is used for public purposes does not impliedly exempt it from the general imposition of an excise tax upon the use of such commodity, where the tax is imposed for the construction and maintenance of highways.

"A county which imports motor fuel in original packages for its own use is a retail dealer within the meaning of a statute imposing an excise tax on such dealers, who are defined to be any person, firm, or corporation who imports into the state motor-vehicle fuels in the original packages for the use of such person, firm, or corporation."

In the case of Orange State Oil Co. v. Amos, 100 Fla. 884, it is said:

"Sections 1153 and 1164, Comp. Gen. Laws, 1927 (chapters 12037 and 12012,

Acts of 1927), require every dealer in gasoline to pay a designated tax per gallon for 'every gallon' of gasoline sold by him. There is no implied exception in the case of gasoline sold to municipalities, and no indication that municipalities should be relieved of paying any increase in the price of gasoline occasioned by the dealer adding the tax to the purchase price."

The Constitution of Florida, sec. 1, art. 9, provides that property of municipalities shall be exempt from taxation. With reference thereto the court said:

"That is a general exemption from 'property' taxes which clearly does not exclude indirect excise taxes, which were not regarded as excluded under the general principles of law of which sec. 897, supra, is largely declaratory. City of Portland v. Kozer [Ore.] 217 P. 833; U. S. v. Perkins, 163 U. S. 625, 41 L. Ed. 287; In re Merriam (N. Y.) 36 N. E. 505; 1 Cooley, Taxation (3rd Ed.) p. 357; 37 Cyc. 1572."

In the case of City of West Palm Beach v. Ernest Amos, 100 Fla. 891, 137 So. 710, it is said:

"The excise imposed by chapter 13756, Acts of 1929, upon the storage of certain petroleum products applies to gasoline owned by municipalities and stored by them exclusively for their own public use."

In the case of People v. Deep Rock Oil Corporation (Ill.) 175 N. E. 572, it is said:

"We come now to the issue concerning the exemption of the city of Chicago, as a municipal corporation, from this tax when the gasoline is used for municipal purposes. It is argued on behalf of the city: First, that this tax is, in fact, a tax on property owned by the municipality; and, second, though it be not such a tax but an excise tax, it was not the intention of the Legislature to include cities within its provisions, since the property of cities is excluded from taxation by statute, and that any use of such property for municipal purposes is excluded unless specifically included. The first point raised by the city is disposed of by the conclusion of this court to the contrary hereinbefore reached, that the tax in this case is not an ad valorem or property tax but an excise tax. In support of the city's second point—i. e., that municipalities are exempt from paying the tax imposed by the Motor Fuel Tax Act—counsel have cited Cooley on Taxation and cases of other jurisdictions adopting the rule that because municipalities are parts of the government and it will not be presumed that the government intended to tax branches of itself, municipalities are exempt unless it specifically appears in the act of the Legislature that such taxation was intended. Such is not the rule in this state. Statutes exempting property from taxation must be strictly construed. All presumptions are against the

intention of the state to bind itself by exempting property from taxation. * * *

"Counsel argue that this statute is limited only to 'persons' and does not include cities or municipalities. It is a sufficient answer to say that by the fifth clause of section 1 of the act relating to construction of statutes (Smith-Hurd Rev. St. 1929, c. 131, sec. 1, cl. 5), the word 'person' or 'persons' may extend and be applied to bodies politic and corporate as well as individuals."

In the case of People v. City and County of Denver, 84 Colo. 576, 272 P. 629, the court held as follows:

"Under Laws 1927, p. 530, amending Laws 1923, p. 474, sec. 1, city is liable for tax of 3 cents per gallon on gasoline offered for sale or used by it and its board of water commissioners; such tax being an excise tax, not a tax on property within Const. art. 10, sec. 4."

In the body of the opinion, the court said:

"The act of 1927 specifically indicates cities as among the persons subject to the tax, so the objection discussed with respect to the first cause is not here involved.

"It is not controverted that Legislatures ordinarily have power by 'specific declaration' (see Denver v. Bonesteel, 28 Colo. 483, 65 P. 628) to tax cities, but it is claimed that article 10, section 4, of the Colorado Constitution, forbids it. That section is as follows: 'The property, real and personal, of the state, counties, cities, towns and other municipal corporations and public libraries, shall be exempt from taxation.'

"This claim is unsound, because the tax in question is an excise tax, and not a tax on property, real or personal. Altitude Oil Co. v. People, 70 Colo. 453, 202 P. 180; D. C. Ry. Co. v. Denver, 21 Colo. 350, 41 P. 826, 29 L. R. A. 608, 52 Am. St. Rep. 239. The Constitution was not directed to such. State v. Life Ins. Co., 8 Idaho, 240, 67 P. 647. It is not a tax on the gasoline, but on the right to sell it, offer it for sale, or use it to propel motor vehicles. See, also, State v. Camp Sing, 18 Mont. 129, 44 P. 517, 32 L. R. A. 635, 56 Am. St. Rep. 551; Ex parte Shaw, 53 Okla. 654, 157 P. 900."

In the case of State of Oregon v. W. C. Preston, 103 Ore. 631, 206 P. 304, 23 A. L. R. 414, it is said:

"A statute exempting municipal property from taxation does not relieve the municipality from the necessity of obtaining a license to operate motor vehicles on the public highways, although the fees are designed in part for raising revenue for governmental purposes, where the licensing statute expressly provides for the exemption of certain other vehicles from its operation."

In South Carolina the statute under consideration specifically mentioned municipal corporations. In the case of City of Green-ville v. Query, 166 S. C. 281, 164 S. E. 844, affirmed U. S. Supreme Court, 52 S. Ct. 631, 76 L. Ed. 1232, the syllabus is:

"Rules of presumption as to intention of Legislature disappear in light of express legislative declaration.

"Excise tax imposed on storage of gasoline held not, as to gasoline imported and stored by cities for municipal purposes, violative of constitutional provision exempting municipal 'property' from taxation (Const. S. C. art. 10, sec. 4; Act April 4, 1930 (36 St. at Large, p. 1390).

"Constitutional exemption from taxation of county, township, and municipal 'property' used exclusively for public purposes does not exempt municipalities from excise tax (Const. S. C., art. 10, section 4)."

In the body of the opinion it is said:

"In 26 R. C. L. p. 315, we find: 'An exemption from taxation applies primarily to the annual general property tax. Whether it is to be extended to other classes of taxes depends upon various circumstances. Thus it does not ordinarily apply to excises, especially to such as are not in lieu of property taxes but are imposed upon the enjoyment of a privilege.' * * *

"In addition, our conclusion is sustained by an almost unanimous line of contemporaneous authorities upholding a tax of this character against like objections of municipal corporations and governmental subdivisions. Crockett v. Salt Lake County, 72 Utah, 337, 270 P. 142, 60 A. L. R. 667; Wright v. Fulton County, 169 Ga. 354, 150 S. E. 262; City of Louisville v. Cromwell, 233 Ky. 828, 27 S. W. (2d) 377, 380; City of West Palm Beach v. Amos, 100 Fla. 891, 130 So. 710; City of Portland v. Kozer, 108 Ore. 375, 217 P. 833; People v. City and County of Denver, 84 Colo. 576, 272 P. 629."

We recognize that there are decisions at variance with the above authorities. Nathan O'Berry v. Mecklenburg County, 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304; Commonwealth v. Pure Oil Co., 303 Pa. 112. Said decisions are based upon a strained construction of the law under consideration therein.

From a review of the above authorities, we are of the opinion that the 1929 Act levied an excise tax on gasoline consumed within this state by municipalities, and that the exemption contained in section 6, art. 10, of the Constitution was intended by the framers thereof to apply only to ad valorem taxes on specific property. That the Legislature has power to impose an excise tax on gasoline consumed by municipalities is fully supported by the above, and in fact, by almost unanimous authority.

The judgment of the trial court is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. RILEY, C. J., and WELCH, J., absent.