## City of Pittsburgh Petition

*Harry C. Beschel, Alvin J. Porsche, Joseph M. Tague,* for petitioner.

*J. D. Golding* and *John D. Stedeford,* for respondents.

KENNEDY, J., November 23, 1955.—This matter is before the court on petition and rule to show cause why a deed without Pennsylvania documentary stamps attached thereto should not be accepted by respondents and the purchase money distributed in accordance with

order of court of November 17, 1953. The property in question was acquired by the city on June 7, 1948, by treasurer's sale under the Act of July 5, 1947, P. L. 1258, and after the period of redemption had run, the city petitioned for approval of a sale of the property for $4,500. Several objectors to the price appeared in accordance with section 14 of the act and with our rule 35A. Respondent Abe Dunn was the successful bidder for $11,600, and the aforementioned order of court, as amended, authorized the mayor to execute and deliver a deed, and set forth the proper distribution of the purchase money to the city, the county, and the school district, respectively. Respondent Dunn and the Union Title Guaranty Company, the escrow agent, now refuse to accept the deed and pay over the balance of the purchase money for the reason that the deed does not have Pennyslvania documentary stamps in the sum of $116 attached. The sole question before us is whether or not the City of Pittsburgh, upon resale of tax-acquired property, is subject to the 1% tax imposed by the Realty Transfer Tax Act. (Act of December 27, 1951, P. L. 1742, reënacted and amended by Act of May 29, 1953, P. L. 257, further reënacted and amended by Act of June 1, 1955, P. L. 128 [Act No. 38]).

In its amended form, that act provides:

"Section 3. Every person who makes, executes, delivers, accepts or presents for recording any document . . . shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one (1) percentum of the value of the property represented by such document, which State tax shall be payable at the time of making, execution, delivery, acceptance or presenting for recording of such document. . . .

"Section 5. The payment of the tax imposed by this act shall be evidenced by the affixing of a documentary stamp or stamps to every document by the person making, executing, delivering or presenting for recording such document. . . ."

Under section two of the act, "person" includes corporations, and the latter term is defined as "A corporation or joint-stock association, organized under the laws of this Commonwealth, the United States, or any other state, territory, or foreign country.". . . A municipal corporation is neither specifically included nor excluded under the provisions of the act. Aside from the fact that the language used customarily applies to private corporations, and not to municipalities, the law is clear in Pennsylvania that a political subdivision is liable under a general taxing statute only if that intention is clearly expressed by the legislature.

There is no question but that the City of Pittsburgh, as a political subdivision, is carrying out a governmental function in the sale of tax-acquired property. The taxing power, and the methods of collection are pursuant to express authority from the legislature.

The leading case on the subject, Commonwealth v. Pure Oil Co. et al., 303 Pa. 112 (1931), held that the City of Philadelphia was not required to pay the State tax on liquid fuels for gasoline purchased and consumed in the performance of governmental duties. The language of the Supreme Court, at page 117, is controlling here:

"What, then, is the true construction of the act on the question of whether or not the tax is payable by municipalities in the performance of their governmental functions, in view of the fact that they are not expressly charged with the payment thereof, nor expressly exempted therefrom? At this late day, the answer thereto cannot be seriously disputed. We have

many times said that while the State may, by a general statute, tax subordinate governmental agencies in matters affecting the performance of their governmental duties, the presumption is that this was not intended, and nothing short of an expressed or necessarily implied purpose to tax them will suffice to make them liable therefor. The legislature knew, for it was bound to know, of our oft-repeated statement to that effect; hence its failure to express its intention to impose the tax, in the act under consideration, can only mean that it did not intend to impose it under the circumstances stated. That the presumption is as above expressed, so clearly appears in a number of cases . . . and is so well known, that it is not necessary to quote from them."

Accordingly, we hold that the City of Pittsburgh is not subject to the Realty Transfer Tax upon the sale of tax-acquired property. As this was the sole question raised by the rule to show cause, we point out that we do not hold the transaction exempt, nor do we touch upon whether or not the grantee may be required to pay the tax and affix documentary stamps. Since the city is not required to affix stamps, respondents have no reason to refuse to accept the tendered deed, and therefor the rule will be made absolute.

### Order of Court

And now, November 23, 1955, after argument and consideration thereof, the rule dated August 31, 1955, granted upon Union Title Guaranty Company and Abe Dunn to show cause why a deed without Pennsylvania documentary stamps attached thereto should not be accepted and the purchase money distributed in accordance with order of court of November 17, 1953, is hereby made absolute.

Eo die exception noted to respondent, Abe Dunn, and bill sealed.